**Gary PREVITO, Plaintiff**

v.

**RYOBI NORTH AMERICA, INC., et al., Defendants.**

Civil Action No. 1:08CV177–HSO–JMR.

United States District Court, S.D. Mississippi, Southern Division.

Dec. 16, 2010.

Robert O. Homes, Jr., Robert O. Homes, Jr., Attorney, Gulfport, MS, for Gary Previto.

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO LIMIT AND/OR EXCLUDE THE TESTIMONY OF CERTAIN "EXPERT" WITNESSES

HALIL SULEYMAN OZERDEN, District Judge.

BEFORE THE COURT is the Motion to Limit and/or Exclude the Testimony of Certain "Expert" Witnesses [174], filed on July 15, 2010, by Defendants One World Technologies, Inc., and Ryobi Technologies, Inc., in the above captioned cause. Plaintiff has filed an Opposition [202], and Defendants a Reply [209]. After consideration of the submissions and the relevant legal authorities, and for the reasons discussed below, the Court finds that Defendants' Motion should be granted.

### I. BACKGROUND

Defendants seek to exclude certain proffered opinions of Plaintiffs designated expert witnesses, Andrew Le Cocq, Dr. Guy W. Walker, and Gregory Bertucci, M.D., on grounds that they are unqualified to render such opinions and that their opinions are otherwise unreliable. Plaintiff has designated Mr. Le Cocq as an expert in human factors. Plaintiff has designated Drs. Walker and Bertucci as experts in the field of vocational rehabilitation and ophthalmology, respectively.

Defendants challenge certain of Mr. Le Cocq's opinions on grounds that he is unqualified to render them, they are unhelpful to the trier of fact, they are irrelevant, and they are otherwise contrary to Mississippi law. Defendants also seek to strike the opinions proffered by Dr. Walker as to any psychological examination or any psychological assessment he administered to Plaintiff, on the basis that Dr. Walker is unqualified to render such opinions. Defendants further wish to exclude those opinions of Dr. Bertucci which: (1) do not rise to the level of a reasonable medical probability; (2) relate to an issue upon which he admits he is not qualified to opine; and (3) lack any factual basis or support.

### II. DISCUSSION

#### A. Daubert Standard

In determining whether proffered expert testimony is admissible, "[d]istrict courts must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir.1999) (*quoting* Fed.R.Evid. 702). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Id.*

When evaluating expert testimony, the overarching concern is whether the expert testimony is "relevant" and "reli-

able." *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir.2007) (*citing Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)). The Court must determine "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592, 113 S.Ct. 2786; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (finding the principles *of Daubert* not limited to "scientific knowledge"). The standards articulated in *Daubert* comport with Federal Rule of Evidence 702, which states that an expert witness may testify

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED.R.EVID. 702.

■■■ *Daubert*, in conjunction with Rule 702, "imposes a special obligation upon a trial judge to ensure that any and all scientific testimony ... is not only relevant, but reliable." *Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 580 (5th Cir. 2001) (*quoting Kumho*, 526 U.S. at 147, 119 S.Ct. 1167). Expert testimony is relevant when it relates to any issue in the case. *See Daubert*, 509 U.S. at 591, 113 S.Ct. 2786. Rule 702's requirement that evidence or testimony "assist the trier of fact to understand the evidence or to determine a fact in issue" goes primarily to relevance. *Id.* (*citing* Fed.R.Evid. 702).

■■■ "[T]he requirement that an expert's testimony pertain to 'scientific knowledge' establishes a standard of evidentiary reliability." *Id.* "The adjective 'scientific' implies a grounding in science's methods and procedures, while the word 'knowledge' connotes a body of known facts or of ideas inferred from such facts or accepted as true on good grounds." *Id.* "The proponent of an expert's testimony need not prove the testimony is factually correct, but rather need only prove by a preponderance of the evidence the testimony is reliable." *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir.2009).

■■■ Reliability is determined by assessing "whether the reasoning or methodology underlying the testimony is scientifically valid." *Daubert*, 509 U.S. at 592–93, 113 S.Ct. 2786. Relevance depends upon "whether [that] reasoning or methodology properly can be applied to the facts in issue." *Id.* at 593, 113 S.Ct. 2786. *Daubert* "provides an illustrative list of factors that may aid a court in evaluating reliability." *Mathis v. Exxon*, 302 F.3d 448, 460 (5th Cir.2002). Those factors are

> (1) whether the expert's theory can be or has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community.

*Id.*

■■■ In *Kumho*, the United States Supreme Court emphasized that this analysis is a flexible one, and that particular *Daubert* factors may be more or less pertinent to the district court's inquiry, depending upon the nature of the issue, the particular area of expertise, and the subject of the

expert's testimony. *Kumho,* 526 U.S. at 152, 119 S.Ct. 1167. This Court's responsibility is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.*

▮ "[T]he proponent of expert testimony ... has the burden of showing that the testimony is reliable," *United States v. Hicks,* 389 F.3d 514, 525 (5th Cir.2004), and must establish the admissibility requirements "by a preponderance of the evidence," *United States v. Fullwood,* 342 F.3d 409, 412 (5th Cir.2003).

### B. *Andrew Le Cocq* [1]

▮ Plaintiff designated Le Cocq to testify as a human factors expert. *See* Pl.'s Expert Desig. [125]. Defendants challenge Le Cocq's opinions as they relate to accident reconstruction, design, quality control, manufacturing, and quality of life, on grounds that he is unqualified to offer such opinions. Defendants further assert that Le Cocq is unqualified to offer any opinion that Plaintiff operated the saw properly. The Court agrees.

Le Cocq proffers the following opinions in his Report:

- it is my opinion that it is most likely that either (a) the plastic guard over the blade tipped up as Mr. Previto ran the 2x4 he was cutting under it, or (b) the carbide tooth glanced several times against the guard and/or the top of the table and entered his eye at an angle. It is my understanding Gary Previto was not wearing safety goggles; however, even if he was, it is my opinion the carbide tooth may still have entered into his eye by passing beneath the bottom or side of the goggles.

- [i]t is my opinion the defendant Ryobi was negligent in designing, manufacturing and distributing a very dangerous and hazardous product that was defectively designed and included inadequate or improper labeling. Ryobi knew, or should have known, that a carbide tooth could break off the saw blade and cause severe injury to an operator of the saw. It is probable that the quality control procedures that would have likely identified a potential failure in the solder joint between the carbide tooth and the saw blade was either not performed or was not performed correctly. Examples of probable quality control techniques could include spinning the blade to ensure all 36 carbide teeth stay in lace and/or microscopic examination of the solder joint. I will defer details on these and other quality control techniques to a quality control expert or metallurgist.

- [i]t is my opinion that it is very likely that Ryobi did not utilize the design hierarchy process or, if they did, they did not implement it properly

Le Cocq Report at pp. 6, 8, 13, attached as Ex. "B" to Defs.' Mot.

Le Cocq acknowledged in his deposition that he is not an expert in the fields of accident reconstruction, design, quality control, or manufacturing. Le Cocq.'s Dep. at pp. 60, 89, 105–106, attached as Ex. "A" to Defs.' Mot. Nor is Le Cocq an expert in the first two steps of the three part design hierarchy process he references in his Report. *Id.* at pp. 136–38. The record evidence reveals that Le Cocq

---

**1.** A *Daubert* hearing to determine the admissibility of Le Cocq's opinions was scheduled for December 14, 2010. However, at Plaintiff's request, *see* Pl.'s Mot. [249], the hearing was cancelled. The Court must therefore resolve the question of the admissibility of the opinions based solely on the written submissions.

has very little experience with table saws, and never examined the subject table saw or an exemplar model prior to issuing his Report. Le Cocq. Dep. at pp. 9–11, attached as Ex. "A" to Defs.' Mot. He further testified that he has not seen any evidence to support his accident reconstruction theories, and that he has not, and will not, perform an accident reconstruction in this case. Le Cocq.'s Dep. at pp. 89, 91, attached as Ex. "A" to Defs.' Mot.

Le Cocq further opines that Plaintiff's quality of life has deteriorated since the accident, Le Cocq. Report at pp. 7–8, attached as Ex. "B" to Defs.' Mot., yet concedes that he is not a quality of life expert, Le Cocq Dep. at pp. 98, 103, attached as Ex. "A" to Defs.' Mot. Le Cocq also states that "Gary Previto did nothing wrong in the operation of the subject table saw," Le Cocq. Report at p. 5, attached as Ex. "B" to Defs.' Mot., but admits that this opinion is based upon an assumption, Le Cocq Dep. at pp. 75–76, 84–85 [2] attached as Ex. "A" to Defs.' Mot.

■ Under Rule 702, "a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise...." Fed.R.Evid. 702. By Le Cocq's own admission, he is not qualified as an expert in the fields implicated by Defendants' challenge. Though Le Cocq does not concede that he is unqualified to opine on the proper use of the saw, the Court cannot conclude that he is qualified to offer expert testimony in this area. The Court is further of the opinion that the majority of the challenged opinions are not based upon sufficient facts and data. Where "there is simply too great an analytical gap between the data and the opinion proffered," *General Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d

508 (1997), the opinion is speculative and should be stricken, *Kemp v. Biolab, Inc.*, No. 1:04cv478, 2005 WL 1595669, at *6 (S.D.Miss. June 22, 2005) (*citing Belo v. City of High Point*, No. 2:94cv163, 1996 WL 33341333, at *6 (M.D.N.C.1996)). Such speculative opinions are unhelpful to the trier of fact. *Id.* For these reasons, the above challenged opinions will be prohibited at trial.

■ Defendants also seek to exclude certain of Le Cocq's opinions regarding the propriety of warnings on the table saw. Though Defendants do not contest Le Cocq's qualifications in this regard, they contend that his opinions are either irrelevant or contrary to Mississippi law.

Le Cocq opines that:

- The Figure 4 warning, shown below, is located on top of the plastic guard. The signal word "WARNING" with the yellow background does not comply with the American National Standard Institute Standard ANSI 2535.4–1991 entitled, Product Safety Signs and Labels". This well known standard states that the signal word, "WARNING" should have an orange background.

- The Figure 7 graphic is located on top of the plastic saw blade guard. This is an improper warning design since graphics should be accompanied by text and the appropriate signal word.

Le Cocq Report at pp. 8–9, 11 attached as Ex. "B" to Defs.' Mot.

Figure 4 warns users of raising the table saw guard during use, the importance of keeping the guard in place during use, and the need to align the riving knife before use. Le Cocq Dep. at pp. 120–122, attached as Ex. "A" to Defs.' Mot. Figure 7

---

**2.** Defendants quoted the relevant testimony from pages 84 and 85 of Le Cocq's deposition, but did not provide actual deposition excerpts of these pages. Plaintiff has not contested the accuracy of these quotations.

is a graphic of a circle with a line through it depicting a hand and a saw blade, essentially warning users not to touch the saw blade. Le Cocq Report at p. 12, attached as Ex. "B" to Defs.' Mot. Despite offering opinions on these warnings, Le Cocq testified at his deposition that these warnings are not relevant to the resent case. Le Cocq Dep. at pp. 120–122, 129, attached as Ex. "A" to Defs.' Mot.

■■■ Expert testimony is relevant when it relates to any issue in the case. *See Daubert,* 509 U.S. at 591, 113 S.Ct. 2786. Rule 702's requirement that evidence or testimony "assist the trier of fact to understand the evidence or to determine a fact in issue" goes primarily to relevance. *Id.* (*citing* Fed.R.Evid. 702). The party offering the expert must prove by a preponderance of the evidence that the proffered testimony is both relevant and reliable under Rule 702. *Mathis v. Exxon Corp.,* 302 F.3d 448, 459–460 (5th Cir.2002). Le Cocq concedes that his opinions, as they relate to Figures 4 and 7 in his Report, are not relevant. Plaintiff does not address Defendants' challenge to these opinions in his briefing. Plaintiff has therefore not satisfied his burden pursuant to Rule 702, and these opinions will be excluded.

■■■ Le Cocq's Report next opines that a particular graphic, which is pictured in the Ryobi Operator's Manual and depicts a user wearing protective goggles, should have been placed adjacent to the eye protection precaution wording on the table saw itself. Le Cocq Report at p. 11, attached as Ex. "B" to Defs.' Mot. He states "[s]ince it is foreseeable that some purchasers will not read the manual it is important to have properly designed and appropriate warnings on the product itself." *Id.* Defendants attempt to exclude this opinion on grounds that it is contrary to Mississippi law.

The Mississippi Products Liability Act (MPLA), Miss.Code Ann. § 11–1–63, provides that:

(a) The manufacturer or seller of the product shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller:

(i) 1. The product was defective because it deviated in a material way from the manufacturer's specifications or from otherwise identical units manufactured to the same manufacturing specifications, or

2. The product was defective because it failed to contain adequate warnings or instructions, or

3. The product was designed in a defective manner, or

4. The product breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product; and

(ii) The defective condition rendered the product unreasonably dangerous to the user or consumer; and

(iii) The defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought.

\* \* \*

(c)(i) In any action alleging that a product is defective because it failed to contain adequate warnings or instructions pursuant to paragraph (a)(i)2 of this section, the manufacturer or seller shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller, the manufacturer or seller knew or in light of reasonably available knowledge

should have known about the danger that caused the damage for which recovery is sought and that the ordinary user or consumer would not realize its dangerous condition.

(ii) An adequate product warning or instruction is one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates sufficient information on the dangers and safe use of the product, taking into account the characteristics of, and the ordinary knowledge common to an ordinary consumer who purchases the product. . . .

MISS. CODE ANN. § 11–1–63.

 "In Mississippi, a warning may be held adequate as a matter of law where the adverse effect was one that the manufacturer specifically warned against." *Austin v. Will–Burt Co.*, 361 F.3d 862, 868 (5th Cir.2004) (*citing Cather v. Cather Tech. Corp.*, 753 F.Supp. 634, 640 (S.D.Miss.1991)). A key element of causation in a failure-to-warn claim under Mississippi law "is proof of a causal link between the plaintiffs' injuries and the product's allegedly lacking a warning or having an inadequate warning. In other words, the failure to warn must be the proximate cause of the injuries suffered or it is irrelevant." *3M Co. v. Johnson*, 895 So.2d 151, 166 (Miss.2005). Where the warning has not been read, the inadequacy of the warning cannot proximately cause a plaintiff's damages. *See Palmer v. Volkswagen of America, Inc.*, 904 So.2d 1077, 1084 (Miss.2005). However

in some inadequate warning cases, "the very nature of the alleged breach is such that it causes a potential plaintiff to fail to read the warning which causes his injury. . . . [In such a case], the warnings are potentially inadequate because they are resented in a manner that pre-

vents a customer from reading them and being warned."

*Id.* at 1085 (*quoting E.R. Squibb & Sons, Inc. v. Cox*, 477 So.2d 963, 970 (Ala.1985)).

Here, Plaintiff has not alleged, nor has he submitted evidence of, a causal link between his injury and Defendants' failure to include the subject graphic adjacent to the written eye protection warning on the saw. To the contrary, in response to Defendants' Motion for Summary Judgment, Plaintiff argues that "[e]ven if the Plaintiff had been wearing the better grade of safety glasses, the carbide tip would most likely have passed below the bottom edge of the glasses and entered his right eye anyway. . . ." Pl.'s Resp. [204] to Defs.' Mot. for Summ. J. at p. 5.

Plaintiff testified that, because many were "common sense," he did not read the eye protection warnings within the owner's manual. Pl.'s Dep. at pp. 125, 127, attached as Ex. "A" to Defs.' Mot. for Summ. J [176]. Plaintiff has not directed the Court to, nor has the Court been able to locate any, record evidence that Plaintiff ever read the written eye protection warning on the saw. Nor has Plaintiff argued or produced any evidence that Defendants' failure to include the subject graphic adjacent to the written eye protection warning on the saw somehow prevented him from reading the written warning on the saw. Instead, in response to Defendants' Motion for Summary Judgment, Plaintiff submits argument in the briefs that "adequate warnings about the most important danger of carbide tips coming off the blade should have been included on the labeling on the saw itself, and those labels should have been clearly visible." Pl.'s Resp. [204] to Defs.' Mot. for Summ. J. at p. 22. No evidence is referenced that Plaintiff read, or was somehow prevented from reading, the written warning on the saw.

█ Nowhere does Le Cocq criticize the adequacy of the written eye protection warning on the saw. Instead he opines that a graphic in addition to the written warning would "help draw attention." Le Cocq Report at p. 11, attached as Ex. "B" to Defs.' Mot. That a written warning would benefit from the addition of a graphic differs from submitting evidence that a plaintiff was prevented from reading a warning because of the absence of the graphic. "Mississippi law does not require the best and most obvious warning but only adequate warning...." *McSwain v. Sunrise Medical, Inc.,* 689 F.Supp.2d 835, 844 (S.D.Miss.2010) (rejecting the argument that plaintiff would have heeded a warning if it had been placed on a placard on the chair instead of in the manual).

Based upon the foregoing, Plaintiff has not established that the failure to include a graphic adjacent to the written warning on the saw proximately caused his injury. Any testimony presented by Le Cocq that the absence of a graphic adjacent to the written warning on the table saw rendered the warning inadequate is therefore irrelevant and should be excluded. *See Kinnison v. City of San Antonio,* SA–08–cv–421–XR, 2009 WL 3768442, at *3 (W.D.Tex. Nov. 5, 2009) ("[i]f Plaintiff's expert testified on a measure of damages barred as a matter of law, then his testimony would be irrelevant and not of assistance to the trier of fact.").

C. *Dr. Guy Walker*

█ Plaintiff designated Dr. Walker as an expert vocational consultant. *See* Pl.'s Expert Desig. [125]. Dr. Walker opines on the results of the Personality Assessment Inventory ("PAI"), a psychological test he administered to Plaintiff. Defendants challenge Dr. Walker's application and interpretation of the results of the PAI on grounds that he "lacks any knowledge, skill, experience, training, and education to provide an expert opinion in the scientific fields of psychiatry and/or psychology...." Defs.' Mem. in Supp. of Mot. at p. 21. Defendants further challenge any psychological assessment Dr. Walker conducted on Plaintiff on grounds that he is unqualified to render such opinions. *Id.* at pp. 22, 23.

There is no dispute that Dr. Walker does not have a degree in psychology or psychiatry. Walker Dep. at p. 35, attached as Ex. "C" to Defs.' Mot. He does not have a license to practice, nor has he ever practiced, psychology or psychiatry. *Id.* The evidence instead reflects that Dr. Walker is licensed as an Ed.D., a Doctor of Education.[3] *Id.* at p. 20; *see* Walker's Expert Report, attached as Ex. "D" to Defs.' Mot. Defendants, citing to case law in support of their position, argue that they have yet to identify a case where any court has permitted opinion testimony on similar psychological examinations by persons not licensed as psychologists or psychiatrists. Mem. in Supp. of Defs.' Mot. at p. 22.

The party offering the expert has the burden of proving, by a preponderance of the evidence, that the proffered testimony satisfies Rule 702. *Mathis,* 302 F.3d at 459–460. Pursuant to Rule 702, this Court "must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *Wilson v. Woods,* 163 F.3d 935, 937 (5th Cir.1999) (*quoting* Fed. R.Evid. 702). Under *Daubert,* the Court must determine "whether the expert is

---

3. There is some confusion as to whether Dr. Walker also has a Ph.D. His Report, however, reflects that he holds an Ed.D. Dr. Walker testified in his deposition that the degrees are essentially the same, except that the Ed.D. includes extra courses focused on counseling theories. Walker Dep. at pp. 19–20, attached as Ex. "C" to Defs.' Mot.

proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592, 113 S.Ct. 2786; *see also Kumho*, 526 U.S. at 147, 119 S.Ct. 1167 (finding the principles of *Daubert* not limited to "scientific knowledge").

Without producing any evidence or citing to any legal authority, Plaintiff counters that Walker is qualified to administer the PAI and is licensed to use the test by the company. *See* Pl.'s Opp'n at p. 9. Plaintiff argues that Defendants' "Memorandum does not show that Walker is not qualified to administer the tests he uses...." *Id.* at 10. As the Court appreciates Defendants' argument, it is the interpretation, and not solely the administration, of the psychological test which Defendants challenge. Plaintiff does not address Defendants' challenges to Dr. Walker's qualifications as to either his interpretation of the psychological test, or his psychological assessment conducted of Plaintiff. Other than signifying that Dr. Walker has an Ed.D., Dr. Walker's Report does not set forth any basis which would otherwise lead the Court to believe he is qualified to provide such testimony. *See* Walker's Expert Report, attached as Ex. "D" to Defs.' Mot. Moreover, Plaintiff does not reference, and the Court has been unable to locate, any case law permitting opinion testimony on the PAI by persons who are not licensed as psychiatrists or psychologists.

Based upon the foregoing, the Court is not assured that Dr. Walker is qualified, based upon his "knowledge, skill, experience, training, or education," to render the opinions Defendants challenge. Plaintiff has not carried his burden here. The Court concludes that Dr. Walker should be precluded from opining as to any psychological examination, including the PAI, administered to Plaintiff. The Court will also exclude any psychological assessment Dr. Walker has conducted of Plaintiff.

### D. *Gregory Bertucci, M.D.*

Plaintiff designated Dr. Bertucci as an expert in ophthalmology. *See* Pl.'s Expert Desig. [125]. Defendants challenge several of Dr. Bertucci's opinions on the following grounds: (1) they do not rise to the level of a reasonable medical probability; (2) they relate to an issue upon which he admits he is not qualified to opine; and (3) they lack any factual basis or support. Mem. in Supp. of Defs.' Mot. at p. 28.

Among other things, Dr. Bertucci states in his report that:

> In addition to the severe direct injury to the right eye, and the resulting blindness in that eye, Mr. Previto *may* have sustained, as a result of the accident in question, an injury related to the left eye. Due to an incident while a teenager, he had dispersion of the macula pigment in his one remaining (left) eye secondary to being shot in the left eye by a BB gun at the age of 15. This situation makes Mr. Previto more prone to developing macular degeneration which *could* result in his inability to read or drive at much earlier age than would have resulted without such an injury. As far as the probability of Mr. Previto losing his vision in his one remaining eye, *I would defer to a retinal specialist* who could better evaluate and speculate as the possibility of this complication....

Bertucci's Expert Report, attached as Ex. "E" to Defs.' Mot. (emphasis added).

Defendants rely upon the Fifth Circuit's holding in *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 396 (5th Cir. 2009), for the proposition that expert testimony must be based upon a medical probability, rather than a possibility, to have any probative value under Mississippi law.

Mem. in Supp. of Def.'s Mot. at p. 29. Because Dr. Bertucci concedes that he would "defer to a retinal specialist who could better evaluate and speculate as the possibility of this complication," Defendants further aver that Dr. Bertucci is admittedly unqualified to opine on this point. Plaintiff does not address Defendants' challenge to Dr. Bertucci's opinion that he may have sustained an injury related to his left eye, but instead responds only to Defendants' second challenge, which relates to Dr. Bertucci's opinion that the carbide tip would have entered Plaintiffs eye regardless of whether Plaintiff was wearing safety glasses.

■■■ Plaintiff has not met his burden of demonstrating that Dr. Bertucci's opinion that Plaintiff may have sustained an injury related to his left eye is admissible pursuant to Rule 702. Moreover, because "[t]estimony in terms of medical probability, rather than possibility," is required to have any probative value under Mississippi law, *Paz*, 555 F.3d at 396, this challenged portion of Dr. Bertucci's testimony, which is not based upon medical probability, is not relevant, *see White v. Thaler*, 610 F.3d 890, 909 n. 17 (5th Cir. 2010) (noting that evidence is not relevant when there is no probative value). Even if relevant, the Court has discretion to exclude expert testimony that is unduly prejudicial under Rule 403, which states that:

> [a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

FED.R.EVID. 403. Even if this challenged testimony has any probative value, such value is marginal and would be outweighed by the danger of confusing the issues and misleading the jury. Such testimony

should therefore be excluded pursuant to Rule 403.

■■■ Dr. Bertucci further states: "In my opinion, based on reasonable medical probability, Mr. Previto would have sustained this injury whether or not he was wearing safety glasses, due to the trajectory of the blade tip and his position in front of the saw." Bertucci's Expert Report, attached as Ex. "E" to Defs.' Mot. Defendants argue that Dr. Bertucci provides no factual basis for this conclusion, and that his Report does not indicate that he read Plaintiff's deposition, watched Plaintiffs reenactment of the accident, or examined the saw at issue, or an exemplar saw or any other saw. Mem. in Supp. of Def.'s Mot. at p. 30. Nor does the report reference any communications with other experts, including an accident reconstructionist. *Id.* Plaintiff counters that Dr. Bertucci's opinions were based upon his own physical examination of Plaintiff, as he is Plaintiffs treating ophthalmologist. Pl.'s Opp'n at pp. 12–13.

■■■ "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). "A court may rightfully exclude expert testimony where ... an expert has extrapolated data, and there is 'too great an analytical gap between the data and the opinion proffered.'" *Burleson v. Texas Dept. of Criminal Justice*, 393 F.3d 577, 587 (5th Cir. 2004) (*quoting Joiner*, 522 U.S. at 146, 118 S.Ct. 512). "[T]he existence of sufficient facts and a reliable methodology is in all instances mandatory. '[W]ithout more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible.'" *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir.2007) (*quoting Viter-*

772

*bo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir.1987)).

Dr. Bertucci's Report is a two page summary of opinions based upon his examination and treatment of Plaintiff. The Report does not identify any sources for the information underlying this particular opinion on the trajectory of the blade tip, which makes it impossible for the Court to determine whether this testimony is based upon sufficient facts or data. *See* Fed. R.Evid. 703. Nor has the methodology for reaching this conclusion been adequately described. This renders Dr. Bertucci's opinion on this point unreliable, and his conclusions irrelevant. *See Astro Technology, Inc. v. Alliant Techsystems, Inc.*, 2005 WL 6061803, at *11 (S.D.Tex. Sep. 28, 2005) ("Absent reliable evidence to support the damages opinions, the opinions are not relevant under Rule 701.") (*citing Burleson*, 393 F.3d at 587).

For the reasons discussed above, the Court is of the opinion that those opinions of Dr. Bertucci's challenged by Defendants do not comport with the Federal Rules of Evidence or the standards set forth in *Daubert*. Those opinions must therefore be stricken. The Court notes that Defendants have challenged only Dr. Bertucci's designation as a trial expert. Mem. in Supp. of Defs.' Mot. at p. 28; *see also* Pl.'s Expert Desig. [125]. Plaintiff has also designated Dr. Bertucci as a treating physician. Pl.'s Expert Desig. [126]. The Court has not been asked to decide, and makes no finding at this time, as to which additional opinions, beyond those excluded here, Dr. Bertucci may offer at the trial in his capacity as a treating physician.

## III. *CONCLUSION*

Based upon the submissions of the parties, the record, and the relevant law, the Court finds that Defendants' Motion should be granted.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Motion to Limit and/or Exclude the Testimony of Certain "Expert" Witnesses [174], filed on July 15, 2010, by Defendants One World Technologies, Inc. and Ryobi Technologies, Inc., in the above captioned cause, should be and hereby is **GRANTED**. Andrew Le Cocq is precluded from opining on accident reconstruction theories, design, quality control, manufacturing, and quality of life. Le Cocq may not testify as to the first two steps in the three part design hierarchy process, but may testify as to the third step which pertains to warnings. He is also precluded from opining as to whether Plaintiff operated the saw properly, and on the adequacy of the warnings contained in Exhibits 4 and 7 of his Report. Nor may Le Cocq opine that the eye protection warning on the saw was less effective than the warning in the owner's manual for failing to include the eye protection graphic. Dr. Guy Walker is precluded from opining as to any psychological examination, including the Personality Assessment Inventory, administered to Plaintiff. The Court also excludes any psychological assessment Dr. Walker has conducted of Plaintiff. Dr. Gregory Bertucci is precluded from testifying that Plaintiff may have sustained an injury related to his left eye, and from opining that the carbide tip would have entered Plaintiff's eye regardless of whether Plaintiff was wearing safety glasses.