

# Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00398-CV

Alma L. **GOMEZ** and Alberto F. Gomez, Individually and as Next Friend of Jorge Elias Gomez,
a Deceased Minor, and on Behalf of the Estate of Jorge Elias Gomez, a Deceased Minor, and
Yolanda Medellin, Individually and as Next Friend of Jesus Medellin,
Appellants

v.

## AMERICAN HONDA MOTOR CO., INC.
Appellee

From the 365th Judicial District Court, Maverick County, Texas
Trial Court No. 11-02-26254-MCV
Honorable Fred Shannon,[1] Judge Presiding

Opinion by:  Rebeca C. Martinez, Justice

Sitting:  Karen Angelini, Justice
Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice (concurring in the judgment only)

Delivered and Filed:  April 22, 2015

AFFIRMED

Alma L. Gomez and Alberto F. Gomez, individually and as next friend of Jorge Elias Gomez, a deceased minor and on behalf of the Estate of Jorge Elias Gomez, a deceased minor, and Yolanda Medellin, individually and as next Friend of Jesus Medellin (collectively, Appellants) appeal the trial court's pre-trial order striking three of their expert witnesses. We affirm the judgment of the trial court.

---

[1] Sitting by assignment.

## BACKGROUND

On the evening of May 23, 2009, Jorge Gomez and Jesus Medellin, both then twelve years old, were riding a 2001 Honda TRX 250 Fourtrax Recon All-Terrain Vehicle (ATV). Two other boys, Angel Reta and Bernardo Rangel, were riding a separate ATV in the same area. Jorge lost control[2] of the ATV he was operating on a dirt road near the edge of the Chula Vista Canal. The ATV went off the edge of the road and landed in the canal. Sadly, Jorge drowned, and Jesus was injured.

The families of Jorge and Jesus sued American Honda Motor Company for strict liability, negligence, and breach of implied warranties of merchantability and safeness for the purpose intended, and sought actual and exemplary damages.[3] Appellants alleged that Honda's unreasonable and defective design and manufacture of the ATV caused the vehicle to flip.

Prior to trial, Appellants timely designated several liability experts, including (1) Dr. David Renfroe, an engineer, to opine about the design and manufacture of the ATV; (2) Randy Nelson, an expert rider, to testify regarding the ATV's stability and maneuverability; and (3) Dr. Marc Green, a human factors expert, to testify regarding alleged deficiencies in the visual warnings on the ATV. Honda filed motions to exclude the testimony and opinions of Renfroe, Nelson, and Green.

The case was set for trial on November 4, 2013 before the Honorable Judge Amado Abascal. On October 28, 2013, the Honorable Judge Fred Shannon was assigned to hear the case. Judge Shannon conducted a telephonic pre-trial conference on October 28, 2013. Judge Shannon

---

[2] Jesus testified that the ATV either struck a pothole or went off the edge of the road.

[3] Appellants also sued (1) Bernard Rangel and Angel Reta (alleging they negligently operated the other ATV in the vicinity of Jorge and Jesus, which caused the accident); and (2) Jose Reta, the father of Angel Reta (for negligently entrusting Angel with the other ATV).

asked the parties to "send me copies of the motions and responses, particularly the expert reports and their curriculum vitaes, to my home address." Promptly after receiving Appellants' responses, Judge Shannon granted in their entirety Honda's motions to exclude the testimony and opinions of Renfroe, Nelson, and Green. Appellants filed separate motions for reconsideration for each excluded expert, which Judge Shannon also denied. Thereafter, the parties agreed to this interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(d) (West 2014).

## STANDARD OF REVIEW AND APPLICABLE LAW

We may not disturb the trial court's exclusion of expert testimony absent an abuse of discretion. *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 718 (Tex. 1998). "The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles." *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995). We cannot find an abuse of discretion merely because we disagree with the trial court's decision. *See id.* This court has held that when "an expert's testimony lacks a reliable scientific basis, its admission by the trial court constitutes an abuse of discretion." *Martinez v. City of San Antonio*, 40 S.W.3d 587, 593 (Tex. App.—San Antonio 2001, pet. denied) (quoting *Ford Motor Co. v. Aguiniga*, 9 S.W.3d 252, 262 (Tex. App.—San Antonio 1999, pet. denied)). When, as here, the trial court does not specify the ground on which it excluded the expert's testimony, we may affirm the trial court's ruling if any ground is meritorious. *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000).

An expert witness may testify regarding scientific, technical, or other specialized matters if the expert is qualified, the expert's opinion is relevant to the issues in the case, and the opinion is based upon a reliable foundation. *See* TEX. R. EVID. 702; *Robinson*, 923 S.W.2d at 556. "To be relevant, the proposed testimony must be 'sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.'" *Robinson*, 923 S.W.2d at 556; *see also* TEX. R. EVID. 401,

402.  To be reliable, the opinion must be based on sound reasoning and methodology.  *State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009); *Robinson*, 923 S.W.2d at 557. Opinion testimony that is conclusory or speculative is not relevant evidence because it does not tend to make the existence of a material fact more probable or less probable.  *See* TEX. R. EVID. 401; *City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex. 2009).  Expert testimony is unreliable if it is no more than subjective belief or unsupported speculation.  *TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 239 (Tex. 2010); *Robinson*, 923 S.W.2d at 557.

In determining whether expert testimony is reliable, a reviewing court must employ "'an almost *de novo*-like review and, like the trial court, look beyond the expert's bare testimony to determine the reliability of the theory underlying it.'"  *Gross v. Burt*, 149 S.W.3d 213, 237 (Tex. App.—Fort Worth 2004, pet. denied) (quoting *Austin v. Kerr-McGee Refining Corp.*, 25 S.W.3d 280, 285 (Tex. App.—Texarkana 2000, no pet.)).  "An expert's simple *ipse dixit* is insufficient to establish a matter; rather, the expert must explain the basis of his statements to link his conclusions to the facts."  *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999) (citing *Gammill*, 972 S.W.2d at 726-27).  In assessing the admissibility of expert testimony, we do not focus on the correctness of the expert's opinion, but on the reliability of the analysis the expert used in reaching his or her conclusions.  *Gross*, 149 S.W.3d at 237; *see also Robinson*, 923 S.W.2d at 558 ("The trial court's role is not to determine the truth or falsity of the expert's opinion.").

The Texas Supreme Court has articulated six non-exclusive factors appellate courts may consider in determining whether scientific evidence is reliable:

> (1) the extent to which the theory has been or can be tested;
> (2) the extent to which the technique relies upon the subjective interpretation of the expert;
> (3) whether the theory has been subjected to peer review and/or publication;
> (4) the technique's potential rate of error;
> (5) whether the underlying theory or technique has been generally accepted as valid by the relevant scientific community; and

(6) the non-judicial uses that have been made of the theory or technique.

*Robinson*, 923 S.W.2d at 557. The approach to assessing reliability must be flexible depending on the nature of the evidence. *Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 216–17 (Tex. 2010). One additional factor that has been held to be of particular significance is whether the expert has ruled out alternative causes of injury; failure to do so may render the opinion unreliable. *See Robinson*, 923 S.W.2d at 559 (holding expert's testimony was not based upon a reliable foundation where he failed to conduct testing to exclude other possible causes of damage); *Martinez*, 40 S.W.3d at 593. Another is whether the expert's research and opinions were conducted and formed solely for the purpose of litigation. *See Robinson*, 923 S.W.2d at 559.

The *Robinson* factors are not always useful, however, in evaluating expert testimony in automobile accident cases. *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 39 (Tex. 2007). Nonetheless, there must be some basis for the opinion offered to show its reliability. *Id*. An expert who provides non-scientific testimony must show how his observations support his conclusions. *See Gammill*, 972 S.W.2d at 727 ("analytical gap" cannot exist between data and expert's opinion).

## DISCUSSION

Initially, Appellants argue that the trial court erred in failing to hold a "gatekeeper hearing" despite their request for such a hearing. "The purpose of a 'gatekeeper hearing' is to allow the trial court to determine whether an expert's opinions are relevant and reliable." *In re Commitment of Marks*, 230 S.W.3d 241, 247 (Tex. App.—Beaumont 2007, no pet.) (citing *Robinson*, 923 S.W.2d at 558). However, the trial court was not required to hold a gatekeeper hearing. *See Piro v. Sarofim*, 80 S.W.3d 717, 720 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (trial court may decide "whether, when, and how to hold a *Robinson* hearing"). Appellants admit as much in their brief, and therefore cannot cite to any authority holding that a trial court must hold such a hearing. The trial court asked the parties to submit the motions to strike as well as the responses for its

consideration, and ruled after both were in its possession. As such, we cannot conclude there was error in failing to hold a *Robinson* hearing. Accordingly, we will now consider whether the trial court abused its discretion in granting Honda's motions to exclude the testimony and opinions of Renfroe, Nelson, and Green.

### *Dr. David Renfroe*

In their Fourth Amended Petition, Appellants alleged that the accident was a result of handling defects of the ATV. Specifically, Appellants alleged that "[d]ue to the solid rear axle design of the vehicle, lack of independent rear suspension, and lack of an open differential, the vehicle is difficult to steer at low speeds due to understeer making the vehicle inherently turn much less than the operator intends." Dr. David A. Renfroe was designated to testify that the design and manufacturing of the ATV was "unreasonably dangerous and defective," and that the accident was a result of handling defects of the ATV. Renfroe is a mechanical engineer who holds a Ph.D. in engineering. In his investigative report, Renfroe opined that: (1) the ATV "has handling characteristics that are difficult for a human to control under reasonable handling conditions;" (2) modifications of the suspension would have alleviated much, if not all, of the "untoward handling characteristics;" and (3) Honda was negligent in failing to test the ATV using standard testing procedures for evaluating handling characteristics before producing and selling to the public. In his deposition, Renfroe testified that he believed the ATV was defective and unreasonably dangerous. Renfroe proposed an alternative design of either an independent rear suspension system, an open differential system, or anti-sway bars, but conceded that the lack of either of the latter two features does not render the ATV defective.

Renfroe based his opinion on "a series of step steer and circle tests [he] performed on this vehicle and on a similar vehicle with design variations to examine the effects of independent rear suspension, variations of front to rear roll couple, and a rear differential on the vehicle handling

response." Specifically, Renfroe tested a 2001 Honda TRX 250 Recon (like the ATV driven by Jorge), a 2006 Honda TRX 250 EX, and a 2006 Honda TRX 250 EX that Renfroe modified to employ his proposed alternative designs. The tests used for evaluating the ATV's handling included driving the ATV in a 25-foot radius circle (Society of Automotive Engineers' (SAE) J-266 circle test), performing a "j-turn" test, and driving the ATV through a slalom course. All of the tests were performed on a paved, concrete surface, and one test was performed on a gravel surface.

The SAE J-266 test is a "steady-state control test procedure" which involves driving a vehicle on a paved circle while various forces are measured. Renfroe admitted that the test was specifically designed for passenger cars and light trucks on pavement, but explained that the test could be used to measure the handling characteristics for any vehicle.

Honda challenged Renfroe's opinions on the grounds that: (1) his opinions are based on testing protocols developed to test handling in cars and light trucks, not ATVs; (2) his testing was not substantially similar to the accident conditions in terms of both terrain and vehicles tested; and (3) his opinion that Honda was negligent in its testing of the ATV has no reliable foundation in fact and is based solely on his *ipse dixit*.

Honda first objected to Renfroe's testing on the ground that it was intended for evaluating passenger vehicles and "Recreational Off-Highway Vehicles" (ROVs)—a different classification of vehicle—and not ATVs. Unlike ATVs, ROVs have a steering wheel and non-straddling seating. ATVs are also "rider-active," meaning that the vehicle's performance is affected by the rider's movements.

Appellants counter that Renfroe's testing methods are reliable because they are used by the United States Consumer Product Safety Commission (CPSC), which also uses the SAE J-266

circle test to test vehicles for understeer and oversteer.[4]  But, Appellants do not indicate that the CPSC also tests ATVs using the SAE J-266 protocol.  In fact, Renfroe could not identify any ATV manufacturer who uses this protocol for testing ATVs, and admitted that no agency requires such testing for ATVs.  We thus agree that, because Renfroe used a testing protocol intended for a different category of vehicles than ATVs, his methodology is unreliable.

Additionally, Renfroe's testing methodology is unreliable in this instance because he conducted this testing under conditions that were not substantially similar to the accident conditions.  While it is not necessary for an expert to reproduce every factor at the time of the accident, it is necessary that the conditions be reproduced "in substantial particulars as to afford a fair comparison in respect to the particular issue to which the test is directed."  *See Barnes v. Gen. Motors Corp.,* 547 F.2d 275, 277 (5th Cir. 1977); *Gen. Motors Corp. v. Gayle*, 951 S.W.2d 469, 475 (Tex. 1997).  Renfroe conducted the majority of his test runs on concrete and three on gravel, yet the ATV at issue specifically warns against operation on paved surfaces ("avoid paved surfaces — pavement may seriously affect handling and control").  Although Appellants contend that the gravel track was substantially similar to the dirt road where the accident occurred, Renfroe admitted that he did not measure the coefficient of the friction for either the test gravel track or the accident scene.

Lastly, Renfroe's testing methodology is unreliable here because the vehicle on which he tested his proposed alternative designs was dissimilar to the ATV at issue.  The ATV involved in the accident at issue was a 2001 TRX 250 Fourtrax Recon.  Renfroe modified a 2006 TRX 250EX to test his proposed alternative designs.  Renfroe testified that he used the 2006 ATV to save costs, because he had previously modified it for a different case.  The two vehicles bear several

---

[4] ATVs are subject to the standard enunciated by the American National Standards Institute (ANSI) and the Specialty Vehicle Institute of America (SVIA).

dissimilarities. The 2001 Recon is a utility work vehicle that is substantially heavier and has a longer length and wheelbase than the 2006 TRX 250EX. Thus, the 2006 TRX 250EX is significantly lighter and shorter than the subject ATV. Although Renfroe stated that the 2001 Recon and the 2006 TRX 250EX have similar handling characteristics, he did not demonstrate that his design alternatives would have provided the same improvements for the subject ATV. Thus, we conclude that Renfroe's opinion and testimony was not based upon reliable testing methodology, and the trial court did not abuse its discretion in excluding same. *See Ledesma*, 242 S.W.3d at 39; *Honeycutt*, 24 S.W.3d at 360 (appellate court may affirm trial court's ruling if any ground is meritorious when trial court does not specify ground on which it excluded the expert's testimony).

### *Randy Nelson*

Appellants designated Randy Nelson, a motorcycle consultant, to testify "regarding the stability and maneuverability of the ATV" and that the "accident was a result of handling defects of the ATV." Nelson testified that he was retained to "[s]peak to the handling and stability of this ATV and its characteristics in handling and stability, and to offer an opinion as to the addition of a mechanical differential or a limited slip differential or make an evaluation as to an independent rear suspension and/or adjustable rear roll stiffness[.]"

Nelson is a veteran rider and mechanic with over 25 years' experience working with and riding ATVs. He has investigated over 1,000 ATV accidents and has testified in 27 states and in Canada. He co-authored two publications, including one for the Society of Automotive Engineers regarding stability and maneuverability problems of ATVs.

Ultimately, Nelson opined that improved handling on the Honda ATV would have prevented the accident at issue. Specifically, Nelson stated that Renfroe's proposed alternative design (i.e., the addition of a rear mechanical differential) would have prevented the accident. To

reach this opinion, Nelson relied on admittedly "subjective testing" he conducted by driving ATVs on courses prepared by Renfroe. Nelson used an exemplar of the ATV involved in the accident, a 2001 Honda TRX 250 Fourtrax Recon, as well as an ATV that was modified with independent rear suspension and one that was modified with a rear differential. The tests were conducted on various surfaces, including dirt, gravel, grass, and uneven surfaces.

Honda moved to exclude Nelson's opinions because (1) Nelson is not qualified to opine about design defects, accident causation, or a safer alternative design; (2) Appellants failed to establish the methodological reliability of Nelson's stability testing; and (3) Nelson's opinions have no factual support or are based only on his *ipse dixit*.

Honda does not argue that Nelson is unqualified to offer general opinions about ATV operation or performance, but instead objects that he is unqualified to opine about alleged design defects in the ATV and the cause of the accident because he admitted the following in his deposition: he is not a licensed engineer; he does not possess a degree in the field of engineering; he has never taught a course in ATV design; he has never consulted with an ATV manufacturer in connection with ATV design; he has never designed a product for an ATV manufacturer; and he is not qualified to perform accident reconstruction. Appellants respond that Nelson is qualified based upon his experience, two published papers, and two previous court rulings permitting him to testify. Appellants, however, fail to explain how Nelson's experience qualifies him to opine that the lack of a rear differential caused the accident at issue. *See Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 642 (Tex. 2009) (holding expert must connect data relied on and his opinion to show how that data is valid support for opinion reached); *Gammill*, 972 S.W.2d at 726 (same). We therefore agree that Nelson was not qualified to offer an opinion as to an alleged design defect, and that the trial court did not abuse its discretion in granting Honda's motion to strike Nelson's opinion and testimony.

*Dr. Marc Green*

In their Fourth Amended Petition, Appellants alleged that "[t]he ATV was made unsafe or dangerous by Honda's failure to provide sufficient warnings, instructions, or labels with the ATV" and that the "lack of adequate warning rendered the product defective and was the producing cause of the damages alleged herein." The ATV in this case belonged to Jorge's father. It was a single-seat vehicle and contained warning labels with the following warnings:

- NEVER operate this ATV if you are under age 16. Operating this ATV if you are under the age of 16 increases your chance of severe injury or death.

- NEVER ride as a passenger. Passengers can cause loss of control, resulting in SEVERE INJURY or DEATH.

- ALWAYS USE AN APPROVED HELMET AND PROTECTIVE GEAR.

It is undisputed that Jorge, age twelve, carried a passenger and that neither boy wore a helmet. In his deposition, Jorge's father testified that he did not give Jorge permission to drive the ATV on the day of the accident. Jorge had driven the ATV on previous occasions without incident.

Dr. Marc Green was designated to testify "to the deficiencies in the visual warnings placed on the ATV in question and the human factors and psychological factors surrounding such warnings." Green has a Ph.D. in psychology. He has over forty years of experience in the field of psychology and has published almost 100 articles and presentations related to human factors and psychology. Green was not critical of the specific warnings Honda provided on the ATV and did not propose an alternate warning. In fact, in his deposition, Green stated, "I'm not going to testify that the warnings as little stickers themselves were deficient." Instead, Green criticized the *concept* of using warnings to prevent accident and injuries. Green testified that it was foreseeable to Honda that children under 16 years of age would use the ATV and would carry passengers and

that such children would ignore the warnings. He therefore opined that instead of using warnings, Honda should have designed the ATV so as to discourage the carrying of passengers.

In his report, Green stated:

> Jorge Gomez and Jesus Medellin acted within the bounds of normal and predictable behavior. It was foreseeable that the messages on stickers affixed to ATV's have limited effectiveness as warnings, i.e., to control user behavior. Given this foreseeability, Honda should have known that the sticker messages could not be relied upon as the means to create safety and to prevent ATV accidents and injury. Honda should have followed the design hierarchy protocol and employed a more reliable safety mechanism.

Green went on to explain that research shows that carrying passengers is a widespread practice, as is driving without a helmet and driving under the age of 16. Given the "limited effectiveness of the sticker messages to function as warnings," Green opined that Honda should have followed a "safety hierarchy" in which it "changed the ATV design and removed the sitting affordance" (i.e., long seat) "if it really wanted to discourage users from carrying passengers." In essence, Green opined that Honda should have shortened the seat so that there would be less room for a potential passenger. Although Green stated that messages about underage drivers have limited effectiveness, he did not offer a "safety hierarchy" solution that Honda could have employed to discourage underage drivers.

Honda moved to exclude Green's opinions for the following reasons: (1) Green's opinions regarding the ineffectiveness of warnings are irrelevant to the issue of adequacy, which the jury must decide; (2) Green's opinions regarding negligence are inadmissible because Green admitted he would not offer such opinions at trial; (3) Green's opinions are unreliable because he did not design or test an alternative warning; (4) Green is not qualified to offer any opinions regarding a proposed design modification of the ATV; and (5) several of Green's opinions lack any foundation or are based solely on his *ipse dixit*.

We conclude that the trial court did not abuse its discretion in striking Green as an expert witness for several reasons. First, Green's testimony does not aid the jury in determining whether the content of Honda's warnings is comprehensible to the average user and whether the warnings explain the dangers to reasonably prudent persons. *See* COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES—MALPRACTICE, PREMISES & PRODUCTS PJC 71.5 (2014). It is immaterial whether Green's opinions concern either the effectiveness or the adequacy of Honda's warnings because the basis of Green's opinion was that *no* warning would have prevented the accident at issue. Green completely sidestepped the question at issue and instead essentially opined that Honda should have expected that children under the age of 16 would ignore its warnings; therefore, Honda should not have bothered to provide any warnings but instead should have designed the ATV in such a way as to eliminate the temptation to carry passengers. Because the jury ultimately must decide whether Honda's warnings are adequate, Green's opinions regarding ineffectiveness will not assist the jury at trial, and they are thus irrelevant.

Second, Green is unqualified to offer design opinions. As a human factors expert, Green's formal education is in the field of psychology. When asked about safer alternative designs in his deposition, Green was adamant that he is not a design expert and that he would leave the "specifics" of a safer alternative design to a designer or a design expert. Nonetheless, Green opined that Honda should have modified the design of the ATV to remove the sitting affordance in order to discourage users from carrying passengers.[5] As a psychologist, Green is unqualified to render such an opinion. *See, e.g., Previto v. Ryobi N. Am., Inc.*, 766 F. Supp. 2d 759, 765-66 (S.D. Miss. 2010) ("human factors" expert was not qualified to provide expert testimony concerning accident

---

[5] As noted, Green offered no design modifications to prevent children under the age of 16 from operating the ATV.

reconstruction, design, quality control, or manufacturing); *Snoznik v. Jeld-Wen, Inc.*, No. 1:09CV42, 2010 WL 1924483, at *18 (W.D.N.C. May 12, 2010) (same).

Finally, several of Green's opinions are subjective and conclusory. Green testified that Honda should have tested more effective warnings. Yet, in his report, Green stated, "I do not know whether Honda ever tested the effectiveness of their messages." Similarly, in his deposition, Green stated that he did not know one way or the other whether Honda tested its warning labels. Thus, Green provided no foundation for his opinion concerning the testing or lack of testing that Honda conducted for the ATV's warnings.[6] Similarly, Green provided no evidentiary foundation for his opinions that it was normal and foreseeable behavior for Jorge and Jesus to ride together, or that carrying passengers on ATVs is normal behavior. Because Green failed to connect the "analytical gap" between his experience and his conclusions, Green's opinions on these subjects is inadmissible. *See Gammill*, 972 S.W.2d at 726. Accordingly, we hold that the trial court did not abuse its discretion in granting Honda's motion to exclude Green's opinion and testimony.

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not abuse its discretion in granting Honda's motions to exclude the opinions and testimony of Renfroe, Nelson, and Green. The judgment of the trial court is therefore affirmed.

Rebeca C. Martinez, Justice

---

[6] Honda's warnings expert could not confirm or deny whether Honda performed such testing.