Jeannie MARTINEZ, et al., Appellants,

v.

CITY OF SAN ANTONIO,
et al., Appellees.

William Hernandez, et al., Appellants,

v.

Via Metropolitan Transit,
et al., Appellees.

Eric T. Ferguson, et al., Appellants,

v.

Alamo Iron Works, Inc.,
et al., Appellees.

Nos. 04–99–00872–CV, 04–99–00873–CV, 04–99–00874–CV.

Court of Appeals of Texas,
San Antonio.

Jan. 31, 2001.

Dennis C. Reich, Shari A. Wright, Robert J. Binstock, Reich & Binstock, Houston, Marvin Miller, Richard Miller, Miller & Miller, San Antonio, E.B. Barretto, Law Offices of Sinkin & Barretto, San Antonio, Newton B. Schwartz, Houston, Stephen W. Boyd, Law Offices of Boyd & Dietzmann, P.C., Boerne, for Appellant.

Emerson Banack, Jr., William T. Armstrong, III, Jeffers & Banack, Inc., Stephen P. Allison, Haynes & Boone, L.L.P., R. Laurence Macon, Courtney McKendrick, Akin, Gump, Strauss, Hauer & Feld, Dwana R. Carr, Robert B. Padgett, Escamilla & Poneck, Inc., San Antonio, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, PAUL W. GREEN, Justice, KAREN ANGELINI, Justice.

## OPINION

PAUL W. GREEN, Justice.

Approximately six-hundred San Antonio residents claim to have been injured as a result of exposure to lead contaminated soils excavated from the site of a former iron foundry during construction of the Alamodome Sports Complex. In three separate lawsuits, which were later consolidated for discovery purposes, the residents named numerous defendants, including the City of San Antonio, VIA Metropolitan Transit ("VIA")(developer of the Alamodome project), and Alamo Iron Works (prior owner of the iron foundry). The defendants filed traditional and "no evidence" motions for summary judgment claiming, among other things, there was no causation evidence demonstrating the injuries claimed by the plaintiffs were caused by the Alamodome excavation activities. After striking the testimony of

the plaintiffs' causation experts, the trial court granted summary judgment to all defendants on "no evidence" grounds and to VIA on sovereign immunity grounds.

The plaintiff-appellants complain the "no evidence" motions for summary judgment were considered prematurely, but that in any event, sufficient evidence was presented to defeat the motions. With regard to the latter assertion, the issue centers on whether the trial court abused its discretion in striking the expert causation evidence when the testimony failed to exclude other sources of lead contamination. We hold the trial court did not abuse its discretion in striking the causation experts and affirm the no-evidence summary judgments. We do not reach the plaintiff-appellants' remaining point of error.

## BACKGROUND

Construction of the Alamodome began in 1990 at a location on the near east side of San Antonio. Before being selected as the site for construction, the location served many industrial businesses, including machine shops, an oil house, a lime house, a tin shop, blacksmith shops, paint storage facilities, and Alamo Iron Works, which operated a ferrous and non-ferrous foundry from 1884 until its closure in 1989. The area surrounding the Alamodome site is mostly a commercial and industrial area, housing a foundry, a furniture factory, a roofing and metal company, and several machine shops.

Appellants live in the neighborhood surrounding the Alamodome. They claim that between October 1990 and September 1993 construction activities at the Alamodome site caused "fugitive dust" containing lead to migrate into and contaminate the surrounding neighborhood. Appellants claim Alamodome construction activities, including hauling contaminated soil from the site, disseminated lead-laden dust throughout the neighborhood, causing property damage and personal injury. Appellants brought suit under the theories of negligence and gross negligence, public and private nuisance, nuisance and negligence per se, trespass, maintenance of an ultra-hazardous activity, and unconstitutional taking of property.

To determine the amount of lead disseminated during construction activities, appellants hired Dr. Jack V. Matson and Dr. Colin J. Baynes. Matson, taking into consideration the various Alamodome construction activities, calculated the amount of fugitive dust emitted during the phases of construction. Next, Matson estimated the amount of lead present in the dust. Baynes took Matson's dust and lead calculations and determined the amount disseminated and the destination of the dust, incorporating the weather conditions during the periods of construction.

In August 1996, the trial court entered a discovery order, selecting fifty plaintiffs for full discovery, including expert reports. In 1998, more than four years after appellants initially filed suit, appellees filed no-evidence motions for summary judgment arguing, among other things, appellants had no evidence of causation. After appellants filed their response, appellees amended their motions for summary judgment and, concurrently, filed a motion to strike the testimony of Matson and Baynes, challenging the reliability of their opinions. In July 1999, the trial court held a *Robinson* hearing and struck the expert testimony. The trial court granted the no-evidence motions, as well as a traditional summary judgment motion in favor of VIA on the ground of sovereign immunity.

## DISCUSSION

Appellants complain the trial court abused its discretion in striking the testimony of Matson and Baynes. Appellants

also challenge the no-evidence summary judgment, arguing it was premature and improper because legally sufficient evidence was presented.

### The No–Evidence Summary Judgment

The trial court granted the no-evidence summary judgment in favor of appellees before the end of the discovery period. Appellants challenge this judgment on the grounds that it was prematurely considered and that there was sufficient evidence to withstand the motion.

#### Premature Consideration of No Evidence Motion for Summary Judgment

■ Appellants argue they were not provided "adequate time for discovery" before the trial court's entry of summary judgment. In support of their argument, appellants rely heavily on the Notes & Comments of Rule 166a(i), which provide "[a] discovery period set by pretrial order should be adequate opportunity for discovery unless there is a showing to the contrary, and ordinarily a motion under paragraph (i) would be permitted after the period but not before." Tex.R.Civ.P. 166a(i), cmt. Appellants also contend the trial court's entry of a *Lone Pine* order [1] hindered their ability to conduct the discovery necessary to overcome the no-evidence motion.

■ No Texas appellate court has overturned a no-evidence summary judgment on the ground that adequate time for discovery had not passed. *See, e.g., Specialty Retailers, Inc. v. Fuqua*, 29 S.W.3d 140, 146 (Tex.App.—Houston [14th Dist.] 2000,

pet. filed) (finding sixteen months adequate time for discovery prior to a no-evidence motion); *Dickson Constr., Inc. v. Fidelity & Deposit Co. of Md.*, 5 S.W.3d 353, 356–57 (Tex.App.—Texarkana 1999, pet. denied) (finding four years adequate time for discovery prior to a no-evidence motion). In determining whether adequate time for discovery has passed, we examine: (1) the nature of the case; (2) the nature of evidence necessary to controvert the no-evidence motion; (3) the length of time the case was active; (4) the amount of time the no-evidence motion had been on file; (5) whether the movant had requested stricter deadlines for discovery; (6) the amount of discovery already taken place; and (7) whether the discovery deadlines in place were specific or vague. *Specialty Retailers*, 29 S.W.3d at 145; *Dickson Constr.*, 5 S.W.3d at 356.

Although judgment was entered prior to the expiration of the discovery period, appellants had adequate time to conduct discovery during the five years the case was pending. In addition, appellants are presumed to have duly investigated their case before filing suit in September 1994. *See McAllister v. Samuels*, 857 S.W.2d 768, 773 (Tex.App.—Houston [14th Dist.] 1993, no writ). Further, the agreed order setting the summary judgment hearings before the end of discovery resulted from appellants' request for a revised case management order; therefore, appellants made the motion, agreed to the order, and now seek reversal based on their own procedural vehicles. Although appellants complain the *Lone Pine* order prevented them from conducting other

---

1. The term, *Lone Pine* order, originates from a New Jersey case where the trial court entered an order "designed to handle the complex issues and potential burdens on defendants and the court in mass tort litigation." *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir.2000) (citing *Lore v. Lone Pine*

*Corp.*, No. L–33606–85 (N.J.Super.Ct.1986)). In this case, the *Lone Pine* order was entered on August 15, 1996, selecting fifty personal injury plaintiffs for full discovery and requiring appellants to prepare expert reports for such plaintiffs within ninety days.

discovery, the evidence discoverable by virtue of the *Lone Pine* order, *i.e.*, full discovery on fifty minor plaintiffs, includes the kind of evidence appellants might have used to overcome the no-evidence motion. Accordingly, we conclude appellants had adequate time for discovery before consideration of the no-evidence motion for summary judgment.

### Sufficiency of Appellants' Evidence

Appellants also argue the no-evidence summary judgment was improper because they raised a fact issue as to causation. Specifically, appellants assert they presented evidence showing that lead originating from the Alamodome site was dispersed throughout the neighborhood during construction activities. Appellants also claim to have presented evidence that such lead from the Alamodome site caused their injuries.

■ No-evidence motions for summary judgment are governed by Texas Rule of Civil Procedure 166a(i). To overcome a no-evidence motion, the nonmovant must produce some evidence raising a genuine issue of material fact as to each element of its cause of action. *Weiss v. Mechanical Associated Servs.*, 989 S.W.2d 120, 123 (Tex.App.—San Antonio 1999, pet. denied). A no-evidence summary judgment is improper when the nonmovant demonstrates more than a scintilla of probative evidence. *Benitz v. Gould Group*, 27 S.W.3d 109, 113 (Tex.App.—San Antonio 2000, no pet. h.). However, the nonmovant may not rely on evidence that is inadmissible or amounts to no more than a scintilla. *Weiss*, 989 S.W.2d at 124. To determine whether the no-evidence summary judgment was proper, we review the evidence in the light most favorable to the nonmovant, disregarding all contrary evidence and inferences. *Id.* When, as in this case, the judgment omits the grounds for the no-evidence summary judgment, we will affirm on any meritorious theory advanced in the motion. *State Farm Fire & Cas. Co. v. S. S.*, 858 S.W.2d 374, 380 (Tex.1993).

■ Causation cannot be established by mere speculation, and to overcome the no-evidence motion, appellants must have presented more than a scintilla of evidence that lead dispersed during Alamodome site construction activities caused their injuries. *See, e.g., Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex.1995); *Ward v. Northeast Tex. Farmers Co-op. Elevator*, 909 S.W.2d 143, 150 (Tex.App.—Texarkana 1995, writ denied). To demonstrate causation, appellants presented circumstantial and expert evidence, including the testimony of Matson and Baynes. After the *Robinson* hearing, the trial court struck the testimony of both experts.

■ We may not disturb the trial court's exclusion of expert testimony absent an abuse of discretion. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex.1995). The test for abuse of discretion is whether the trial court acted arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Id.* We cannot find an abuse of discretion simply because we would have ruled differently in the same circumstances or if the trial court committed a "mere error in judgment." *Id.* Admissibility of expert testimony is governed by the Texas Rules of Evidence and the *Robinson* factors. Tex.R.Evid. 702, 705(c); *Robinson*, 923 S.W.2d at 556. *Robinson* teaches that, in addition to demonstrating an expert witness is qualified to testify, the proponent must also demonstrate the expert's testimony is both relevant to the issues and based on a reliable foundation. *Robinson*, 923 S.W.2d at 556. At the *Robinson* hearing, appellees did not challenge the experts' qualifications or the relevance

of their opinions, but rather, challenged the reliability of the expert testimony.

 This court has held that when "an expert's testimony lacks a reliable scientific basis, its admission by the trial court constitutes an abuse of discretion." *Ford Motor Co. v. Aguiniga,* 9 S.W.3d 252, 262 (Tex.App.—San Antonio 1999, pet. denied). Further, we have held an expert's failure to rule out alternative causes of injury renders the opinion unreliable. *Weiss,* 989 S.W.2d at 125 (citing *Merrell Dow Pharmaceuticals, Inc. v. Havner,* 953 S.W.2d 706, 711–12 (Tex.1997)). In *Havner,* the supreme court described how the foundation of an expert opinion could be unreliable:

> If the foundational data underlying opinion testimony are unreliable, ... any opinion drawn from that data is likewise unreliable. Further, an expert's testimony is unreliable even when the underlying data are sound if the expert draws conclusions from that data based on flawed methodology. A flaw in the expert's reasoning from the data may render reliance on a study unreasonable and render the inferences drawn therefrom dubious. Under that circumstance, the expert's scientific testimony is unreliable and, legally, no evidence.

*Havner,* 953 S.W.2d at 714.

### Testimony of Dr. Jack V. Matson

██ Matson made two calculations in arriving at his conclusion. First, utilizing the Environmental Protection Agency's AP–42 test, he determined the rate of fugitive dust emissions during Alamodome construction activities. Second, he calculated the amount of lead present in the emitted dust. Although Matson did rely upon the accepted AP–42 test to arrive at a conclusion regarding the amount of dust emissions, he employed his own independent methodology to calculate the amount of lead present in the dust emissions.

Matson's second calculation regarding the amount of lead took two steps to derive. First, he examined the results of soil sample testing conducted at the Alamodome site to determine the fraction of the lead present in the Alamodome soil. He then concluded that, due to the size and weight of the soil samples, the amount of lead which became airborne in the dust would not be accurately reflected in the soil sample results, *i.e.,* that smaller particles (those with less mass) would be more likely blown into the air because of their lighter weight. Accordingly, Matson applied an "enrichment factor" to the results, calculating there was 3.3 times more lead in the airborne dust disseminated throughout the neighborhood than in the soil sampled by the testing engineers.

To support Matson's use of the "enrichment factor," appellants point to the "Socorro Report," a study regarding lead contamination resulting from a New Mexico smelting facility. Appellees presented evidence to the trial court attacking appellants' reliance on the Socorro Report. Specifically, appellees point out that no demonstration was made that: (1) a lead smelter is comparable to the iron foundry in question; (2) New Mexico desert soils are comparable to San Antonio soils in terms of cohesiveness, moisture retention, and clay content; (3) lead in San Antonio soils is distributed into the fine portion of the soils at a 3.3 or any other ratio; (4) the meteorology (especially rainfall) in New Mexico is comparable to San Antonio; and (5) results from measuring 100 year old lead deposits from a lead smelter on soil in New Mexico is relevant to lead in soil at an iron foundry in San Antonio, Texas in 1991–93. Further, we also recognize Matson determined the "enrichment factor" first and then located the Socorro Report

to support his conclusion. Considering the evidence presented to the trial court, we cannot conclude the trial court abused its discretion in striking Matson's testimony.

### Testimony of Dr. Colin J. Baynes

■■■ The reliability of Baynes's opinion hinges on the reliability of Matson's calculations. In arriving at his conclusion, Baynes used the Industrial Source Complex Model ("ISCM") developed for the Environmental Protection Agency. He then input Matson's calculations to arrive at a conclusion regarding the amount of lead emitted throughout the construction activities. Although Baynes's methodology, the ISCM, may be accepted and reliable, the use of Matson's unreliable calculations within the equation renders his opinion unreliable. As such, we cannot conclude the trial court abused its discretion in striking Baynes's testimony.

### Other Evidence of Injury Causation

Notwithstanding the exclusion of the experts' testimony, appellants claim they presented evidence that lead in their houses originated from the Alamodome site. They presented soil samples demonstrating the soil at the Alamodome site contained lead, along with evidence that dust in appellants' homes contained lead. They also presented evidence of the various construction activities taking place, including the trucking of the contaminated soil throughout the neighborhood. Moreover, medical tests confirmed the neighborhood children had higher than average levels of lead in their blood. Finally, appellants introduced the expert testimony of Dr. James Millette who, after performing gas chromotography, concluded that lead in the dust in appellants' houses probably originated from the Alamodome site.

In *Weiss*, the plaintiff brought suit against a radiology group operating in a neighboring office, claiming injury from exposure to chemicals that migrated from the radiology office into hers. *Weiss*, 989 S.W.2d at 122–23. The plaintiff's expert concluded the chemical exposure could be inferred from the plaintiff's manifestation of physical symptoms. *Id.* at 123. The expert noted the plaintiff's symptoms were similar to those caused by exposure to the chemical in question. *Id.* However, he could not rule out the possibility that mold or other fungi detected in the environmental study could have caused the illness, and he acknowledged the plaintiff exhibited some of her symptoms prior to working in the building. *Id.*

After assuming the admissibility of the expert testimony, we reviewed it, along with the plaintiff's circumstantial evidence of causation, to determine if the plaintiff raised an issue of fact:

> In *Havner*, the court found no evidence of causation, despite evidence of exposure, because Havner failed to introduce evidence excluding other plausible causes with reasonable certainty. In particular, the court observed the expert opinion was unsupported by the epidemiological studies cited within and was based on unreliable medical opinions.

*Id.* (citations omitted).

Following *Havner*, we concluded the expert testimony amounted to "no evidence" of causation, and although the plaintiff presented circumstantial evidence of exposure, her experts were not permitted to stack their inferences upon the circumstantial evidence without a reliable foundation. *Id.* Accordingly, we affirmed the no-evidence summary judgment because the plaintiff presented no evidence of causation. *Id.*

■■■ In the present case, appellants claim they presented some evidence of in-

jury causation by demonstrating: (1) they suffered injuries consistent with lead poisoning; (2) lead poisoning causes injuries; and (3) expert testimony that the quantity of lead dissemination leads to injuries. Appellants introduced general testimony from two medical experts, Drs. Joel Pounds and Wayne Snodgrass, regarding the injuries that can result from lead exposure, including the injuries resulting low-level exposure like that claimed by appellants. Further, appellants introduced the expert testimony of Dr. Alan R. Hirsch, who examined the forty-nine minor appellants selected by the *Lone Pine* order. Of those children, seventy-six percent displayed lead-induced neurological dysfunction.

Although Dr. Hirsch's report demonstrates the examined appellants were exposed to lead, it could not determine the source of the lead. Further, the testimony of Drs. Pounds and Snodgrass that exposure to lead is serious does not demonstrate the children examined have lead poisoning. Rather, the doctors merely showed the children are at risk for lead poisoning, which is insufficient to raise a genuine issue of material fact: "To raise a fact issue on causation and thus to survive legal sufficiency review, a claimant must do more than ... show a substantially elevated risk.... Further, if there are other plausible causes of the injury or condition that could be negated, the plaintiff must offer evidence excluding those causes within reasonable certainty." *Havner*, 953 S.W.2d at 720 (citations omitted). Although causation may be proved by expert testimony, the probability about which the expert testifies must be more than coincidence for the case to reach a jury. *Weiss*, 989 S.W.2d at 125 (citing *Schaefer v. Tex. Employers' Ins. Ass'n*, 612 S.W.2d 199, 202 (Tex.1980)).

Appellants also point to the evidence they claim was improperly excluded by the trial court, *i.e.*, the expert opinions of Matson and Baynes. Specifically, appellants claim the testimony of Matson and Baynes demonstrates the construction activities taking place on the Alamodome site caused emission of toxic quantities of lead throughout the neighborhood. Matson's opinion constitutes no evidence because he failed to address the lead emission rates of sources other than the Alamodome's construction activities:

Q. Is [the Alamodome site] the only potential source of contamination or air pollution that you examined?

A. Yes.

Q. You did not look at any other possible contributing sources to any lead in the atmosphere in San Antonio; is that correct?

A. That's correct. I was not concerned with the lead in the atmosphere from any other site other than the Alamodome.

The opinions of Matson and Baynes, when offered to prove Alamodome site lead caused appellants' injuries, constitute no evidence because Matson, in arriving at his lead calculation, failed to rule out alternative sources of the lead contamination. *Id.; Mitchell Energy Corp. v. Bartlett*, 958 S.W.2d 430, 447–48 (Tex.App.—Fort Worth 1997, pet. denied). We thus conclude appellants have presented no evidence demonstrating that Alamodome site lead disseminated through construction activities caused their injuries.

## CONCLUSION

We hold the trial court did not abuse its discretion in striking appellants' causation experts. We affirm the trial court's no-evidence summary judgment in favor of all

appellees, and accordingly, we do not reach appellants' remaining point of error.