No. 04-00-00737-CV



Marie VALERO,


Appellant



v.



FORD MOTOR COMPANY and Jennings- Anderson Ford, Inc.


Appellees



From the 216th District Court, Kendall County, Texas


Trial Court No. 96-214


Honorable Charles Sherrill, Judge Presiding



Opinion by: Sarah B. Duncan, Justice


Sitting: Catherine Stone, Justice

 Sarah B. Duncan, Justice

 Karen Angelini, Justice


Delivered and Filed: December 19, 2001


AFFIRMED

 Marie Valero appeals the summary judgment against her in her products liability suit against
Ford Motor Company and Jennings-Anderson Ford, Inc., contending the trial court abused its
discretion in striking her expert's testimony. We affirm.

Factual and Procedural Background


 On September 2, 1995 at approximately 3 a.m., Marie Valero was injured in a one-car
automobile accident that occurred on Texas Highway 173 between Bandera and Kerrville. Valero's
cousin, Becky Trevino, was driving the automobile, a 1993 Ford Taurus, owned by Trevino's parents.
The Trevinos had purchased the used automobile in December 1993 from Jennings-Anderson Ford.

 Both girls were eighteen years old at the time of the accident and had traveled to Bandera on
the evening before the accident to meet friends. While in Bandera, the girls smoked marijuana Valero
had purchased earlier that day and each drank two beers. At some point while driving, Trevino lost
control of the car, drove off the road through a barbed-wire fence, and hit a large tree. Valero, who
was not wearing a seat belt, was ejected from the automobile onto the hood where she lay
unconscious when the automobile caught fire. Valero suffered burns to her right and left thighs and
her right heel.

 Valero sued defendants, alleging that a design defect in the fuel line contributed to the severity
of the fire in the engine compartment by feeding the fire fuel from the gas tank. Valero alleged causes
of action for strict liability, negligence, gross negligence, breach of express and implied warranties,
and DTPA violations. Defendants moved to exclude the testimony of Valero's two experts, John
Lohman and Jerry Wallingford. Defendants argued Wallingford was not qualified to testify as an
expert and his opinions were unreliable. Valero did not file a response and the trial court struck both
experts' testimony. Subsequently, Valero withdrew her claims for DTPA violations, breach of
warranty, gross negligence, strict liability, and negligence based on defective manufacturing, leaving
only the negligence and strict liability claims related to design defect. Defendants then filed a no-evidence motion for summary judgment, which the trial granted. Valero appealed. (1) 

Standard of Review


 We review the trial court's decision to exclude expert testimony for an abuse of discretion.
Gammill v. Jack Williams Chevrolet, Inc., 972 S.W.2d 713, 727 (Tex. 1998). A trial court abuses
its discretion when it acts arbitrarily, unreasonably, or without reference to any guiding rules or
principles. Martinez v. City of San Antonio, 40 S.W.3d 587, 592 (Tex. App.- San Antonio 2001, pet
denied.).

Reliability of Expert Opinion


 Valero argues the trial court erred in striking Wallingford's testimony, which is the only
summary judgment evidence tending to establish the alleged design defect in the 1993 Ford Taurus.
In response, Defendants contend and Valero agrees Wallingford's testimony does not conform to the
Robinson factors. However, Valero argues these factors are not exclusive, and reliability can be
established by the expertise and skill of the expert testifying. She therefore asks us to review
Wallingford's testimony, using the "analytical gap" standard. Defendants maintain that under either
standard, Wallingford's opinions were unreliable, because they lacked a scientifically reliable basis.
Specifically, defendants argue the trial court properly excluded Wallingford's opinions, because he:
(1) failed to rule out alternative causes for the severity of the fire damage; (2) performed no testing
to support his opinions; (3) and his examination of the evidence was incomplete and cursory. We
agree.

Applicable Law


 Because Wallingford's testimony as a mechanical engineer is based primarily on his experience
and does not conform to the factors enumerated in Robinson, we apply the more general reliability
test espoused in Gammill. See E.I. du Pont de Nemours and Co., Inc. v. Robinson, 923 S.W.2d 549,
557 (Tex. 1995); Gammill, 972 S.W.2d at 727. In applying the "analytical gap" standard, a trial court
is not required to admit opinion evidence which is connected to existing data only by the "ipse dixit"
or say so of the expert. Id. Rather, a court may conclude "'there is simply too great an analytical gap
between the data and opinion proffered.'" Id. (quoting General Elec. Co. v. Joiner, 522 U.S. 136,
146 (1997)). An impermissible analytical gap exists if an expert fails to demonstrate how his
observations support his conclusions. Gammill, 972 S.W.2d at 727. However, in making its initial
determination as to the admissibility of expert testimony, the trial court is not to determine whether
an expert's conclusions are correct, but only whether the analysis used to reach them is reliable. Id.
at 728.

Discussion


 Wallingford testified the fire originated in the engine compartment where the nylon fuel lines
are located. He asserts the nylon lines were crushed by the fire wall and engine when the automobile
collided with the tree. Then, the initial fire, which may have been caused by gasoline or other
flammable, combustible fluids and materials present in the automobile, further compromised or melted
the nylon fuel lines, allowing fuel to be siphoned from the fuel tank. The siphoning effect, according
to Wallingford, supplied the existing fire with enough fuel to burn the automobile from one end to
the other. He surmised the initial fire was fed by gasoline, because damage to the automobile was
severe. As a safer alternative to the allegedly defective nylon fuel line, Wallingford proposed a fuel
line constructed of stainless steel, because he believed a metal fuel line could not be compromised to
the extent it would allow fuel to be siphoned from the fuel tank.

 Even assuming Wallingford was correct, he offers nothing other than his experience and
general engineering principles to establish his conclusions that: the nylon fuel line, here, permitted
siphoning of fuel; nylon fuel lines are therefore unreasonably dangerous; and metal fuel lines are a
safer alternative. See id. at 725 ("experts who purport to rely on general engineering principles and
practical experience [may not] escape screening by the district court [for reliability] simply by stating
that their conclusions were not reached by any particular method or technique."). Wallingford
conceded he would have to perform tests on the vehicle involved in the accident and/or an exemplar
vehicle to determine if siphoning had occurred or could occur when the fuel pump is off.
Nevertheless, he did not perform any such tests. Thus, Wallingford failed to establish "what he
believes could have happened actually did happen." Id. at 728. 

 Nor did he perform tests to establish siphoning could not occur with fuel lines made of
stainless steel. Instead, he summarily concluded that because he knew of no other manufacturer that
was currently utilizing or had recently utilized nylon fuel lines, nylon fuel lines are unsafe whereas
stainless fuel lines are safe. He did not know if Ford was still using nylon lines but assumed it was not,
because Ford began installing stainless lines in its light trucks in 1993. While it is possible
manufacturers switched from nylon to metal fuel lines for safety reasons, it is just as likely the switch
was attributable to cost, availability of materials, or other reasons, because although Wallingford
suggested this was common knowledge in the industry, he did not provide any data, case studies, or
publications to establish his conclusions "comport[] with applicable professional standards outside
the courtroom." Id. (quoting Watkins v. Telsmith, Inc., 121 F.3d 984, 991 (5th Cir. 1997)). Thus,
his conclusion "was supported by little more than his credentials as an engineer."Gammill, 972
S.W.2d at 726-27.

 In addition, the evidence does not support his theory the fire was unusually severe due to the
introduction of fuel by the defective fuel line. Although Wallingford inspected the automobile in
question, he did not consider the testimony of witnesses or the driver. See, e.g., Ford Motor Co. v.
Aguiniga, 9 S.W.3d 252, 256 (Tex. App.-San Antonio 1999, pet. denied) (in assessing reliability of
mechanical expert, court considered the fact the expert had questioned witnesses and the driver to
determine the cause of the accident). As a result, he had no way of knowing how much fuel was in
the fuel tank before the accident. He also did not know how much fuel remained after the accident,
because he had not disassembled the fuel tank as he says would have been necessary, and he could
not make this determination using "burn pattern evidence," because he did not inspect the automobile
until three years after the accident. 

 Moreover, Wallingford did not consider and was unable to exclude alternate sources of fire
such as potentially flammable or combustible materials present in the vehicle that could have
contributed to the severity of the fire. See Martinez, 40 S.W.3d at 593. When asked, he did not know
whether the grass under the automobile had caught fire or whether it played a role in the fire. Failure
to rule out alternative causes such as these renders his opinion unreliable. See Weiss v. Mech. Assoc.
Serv., Inc., 989 S.W.2d 120, 125 (Tex. App.--San Antonio 1999, pet. denied). Without some
explanation of the data or reasoning he employed, his conclusion is simply inadmissible "ipse dixit."
Consequently, his opinions amount to no more than "subjective belief or unsupported speculation."
Robinson, 923 S.W.2d at 557.



Conclusion


 Having concluded the expert's opinion was unreliable, we need not address the issue of
whether the expert was qualified. We therefore hold the trial court did not abuse its discretion in
striking Valero's expert and affirm the trial court's no-evidence summary judgment in favor of the
defendants.

 Sarah B. Duncan, Justice

Do not publish
1. On appeal, Valero only challenges the trial court's ruling excluding the testimony of Jerry Wallingford.