

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00620-CV

Rosa Obregon **PEREZ**, Ricardo O. Perez, Rosa Elia Perez, Maria Perez Jalomus, Juan Jose
Perez, Julio Perez, Jr., and Fernando Perez,
Appellants

v.

**THE GOODYEAR TIRE & RUBBER COMPANY**,
Appellee

From the 83rd Judicial District Court, Val Verde County, Texas
Trial Court No. 26130
Honorable Robert Cadena, Judge Presiding

Opinion by:    Rebeca C. Martinez, Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Rebeca C. Martinez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  April 13, 2016

AFFIRMED IN PART; REVERSED AND REMANDED IN PART

On August 19, 2015, the court issued its opinion and judgment in this appeal.  Although a

motion for reconsideration en banc is pending, the panel, on its own motion, withdraws its opinion

and judgment of August 19, 2015, and substitutes this opinion and judgment in their stead.

In this products liability case, Rosa Obregon Perez, Maria Perez Jalomus, Rosa Elia Perez,

Juan Jose Perez, Julio Perez, Jr., Fernando Perez, and Ricardo O. Perez (collectively referred to as

"Perez") challenge the trial court's take-nothing summary judgment rendered in favor of The

Goodyear Tire & Rubber Company.  Perez asserts that the trial court erred in granting Goodyear's

no-evidence motions for summary judgment as to her defective design and defective marketing claims. As a subset of this issue, Perez contends that the trial court erred in excluding the affidavit testimony of her retained tire expert, William J. Woerhle. We affirm in part, and reverse and remand in part.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 14, 2006, Julio O. Perez, Sr. was transported for a dialysis appointment from Del Rio to Uvalde in a Ford E-350 van that had been converted into an ambulance owned by Medical Transport of South Texas, Inc. While traveling on U.S. Highway 90, the tread of a Goodyear Wrangler HT LT245/75 R16 tire separated. The separation of the tire caused the driver to lose control, and the ambulance rolled over. Mr. Perez died from injuries he sustained in the accident.

Perez filed suit against Medical Transport of South Texas and the ambulance driver asserting wrongful death and survival claims; Perez later amended the petition to assert claims against Ford Motor Company and Goodyear. Perez claimed Goodyear was liable under strict liability and negligence theories for defectively designing, manufacturing, and marketing the tire at issue. In 2010, Perez resolved her claims against all defendants except Goodyear.

In her "Eighth Amended Original Petition," Perez alleged that the tire at issue was defectively designed, manufactured, and marketed and that Goodyear was strictly liable under Sections 402A and 402B of the Restatement of Torts 2nd and under applicable products liability law of the State of Texas. Perez also alleged that Goodyear was negligent in failing to: (1) properly design the tire in question; (2) properly manufacture the tire in question; (3) properly warn that tires six years old or older should not be used regardless of tread life; (4) properly design the tire in question to include nylon overlays on the tire; (5) warn that tires six years old or older should

not be used regardless of tread life; and (6) warn that the subject tire did not have nylon overlays and was at a high risk for tread separation.

Goodyear timely filed its motion to exclude the expert testimony of Woehrle. Goodyear also filed a no-evidence motion for summary judgment on each of the liability theories contained in Perez's live pleadings. The parties filed numerous supplements, responses, replies, and objections relating to the pending motion to exclude and the motion for summary judgment. Thereafter, Goodyear filed a second no-evidence motion for summary judgment. The parties again filed responses, replies, and supplements.

On May 7, 2014, the trial court granted Goodyear's motion to exclude Woehrle's testimony without stating the basis for its decision. On June 2, 2014, the trial court granted a partial no-evidence motion for summary judgment on Perez's "alleged manufacturing defects and negligent manufacturing" claims,[1] as well as on Perez's "claims based upon tire aging and failure to warn about the age of the tire." On July 11, 2014, the trial court signed a second summary judgment order in favor of Goodyear as to the "alleged design defect and negligent design" claims.

Thereafter, on July 31, 2014, the trial court signed a "Final Judgment" in which it resolved and disposed of all claims and all parties in the litigation. Perez timely filed her notice of appeal.[2]

---

[1] On appeal, Perez does not challenge the granting of summary judgment as to her manufacturing claims.

[2] In its appellee's brief, Goodyear asserts that Perez's notice of appeal was untimely and that we lack jurisdiction to entertain this appeal. Goodyear contends that once the trial court signed the second order granting the no-evidence summary judgment as to design defect on July 11, 2014, all claims and parties were disposed of and thus the July 11, 2014 order became an appealable judgment from which the appellate timetable began to run. We disagree that the second summary judgment order disposed of all outstanding claims. To the contrary, the sixth negligence claim asserted in Perez's "Eighth Amended Original Petition" was not addressed by either the June 2, 2014 or July 11, 2014 orders; in that claim, Perez alleged that Goodyear "[f]ailed to warn that the subject tire did not have nylon overlays and was at a high risk for tread separation." Because the nylon overlay marketing claim was still outstanding, the July 31, 2014 "Final Judgment" is in fact the final, appealable order from which the appellate timetable began to run and from which Perez timely filed her notice of appeal.

# I. EXCLUSION OF EXPERT TESTIMONY

We first address whether the trial court erred in excluding the testimony of tire expert Woerhle.

## A. Standard of Review and Applicable Law

We may not disturb the trial court's exclusion of expert testimony absent an abuse of discretion. *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 718-19 (Tex. 1998). "The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles." *E.I. du Pont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995). This court has held that when "an expert's testimony lacks a reliable scientific basis, its admission by the trial court constitutes an abuse of discretion." *Martinez v. City of San Antonio*, 40 S.W.3d 587, 593 (Tex. App.—San Antonio 2001, pet. denied) (quoting *Ford Motor Co. v. Aguiniga*, 9 S.W.3d 252, 262 (Tex. App.—San Antonio 1999, pet. denied)). However, "[a] trial court abuses its discretion in excluding expert testimony if the testimony is relevant to the issues in the case and is based on a reliable foundation." *State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009). Ultimately, we will not disturb the trial court's ruling on the reliability of expert testimony unless it appears from the record that the trial court acted without reference to pertinent guiding rules or principles. *Coastal Tankships, U.S.A., Inc. v. Anderson*, 87 S.W.3d 591, 611-12 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (citing *Robinson*, 923 S.W.2d at 558).

An expert witness may testify regarding scientific, technical, or other specialized matters if the expert is qualified, the expert's opinion is relevant to the issues in the case, and the opinion is based upon a reliable foundation. *See* TEX. R. EVID. 702; *Robinson*, 923 S.W.2d at 556 (adopting analysis of *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589-90 (1993)). "To be relevant, the proposed testimony must be 'sufficiently tied to the facts of the case that it will aid the jury in

resolving a factual dispute.'" *Robinson*, 923 S.W.2d at 556; *see also* TEX. R. EVID. 401, 402. To be reliable, the opinion must be based on sound reasoning and methodology. *Cent. Expressway Sign Assocs.*, 302 S.W.3d at 870; *Robinson*, 923 S.W.2d at 557. Opinion testimony that is conclusory or speculative is not relevant evidence because it does not tend to make the existence of a material fact more probable or less probable. *See* TEX. R. EVID. 401; *City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex. 2009). Expert testimony is unreliable if it is no more than subjective belief or unsupported speculation. *TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 239 (Tex. 2010); *Robinson*, 923 S.W.2d at 557.

An expert must be qualified "by knowledge, skill, experience, training, or education" to "assist the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702; *In re Commitment of Bohannan*, 388 S.W.3d 296, 304 (Tex. 2012). There are no definite guidelines to determine whether a witness' education, experience, skill, or training qualifies the witness as an expert. *W. Atlas Int'l., Inc. v. Wilson*, 930 S.W.2d 782, 787 (Tex. App.—Tyler 1996, writ denied). The witness may express an opinion on a subject if the witness has specialized knowledge that will assist the trier of fact in understanding the evidence or in determining a fact in issue. *Id.* "The specialized knowledge which qualifies a witness to give an expert opinion may be derived from specialized education, practical experience, a study of technical works, or a varying combination of these things." *Penry v. State*, 903 S.W.2d 715, 762 (Tex. Crim. App. 1995). Ultimately, in deciding whether an expert is qualified, the trial court must "ensur[e] that those who purport to be experts truly have expertise concerning the actual subject about which they are offering an opinion." *Gammill*, 972 S.W.2d at 719 (quoting *Broders v. Heise*, 924 S.W.2d 148, 152 (Tex. 1996)).

In determining whether expert testimony is reliable, a reviewing court must employ "'an almost de novo-like review and, like the trial court, look beyond the expert's bare testimony to

determine the reliability of the theory underlying it.'" *Gross v. Burt*, 149 S.W.3d 213, 237 (Tex. App.—Fort Worth 2004, pet. denied) (quoting *Austin v. Kerr-McGee Refining Corp.*, 25 S.W.3d 280, 285 (Tex. App.—Texarkana 2000, no pet.)). "An expert's simple *ipse dixit* is insufficient to establish a matter; rather, the expert must explain the basis of his statements to link his conclusions to the facts." *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999) (citing *Gammill*, 972 S.W.2d at 726-27). In assessing the admissibility of expert testimony, we do not focus on the correctness of the expert's opinion, but on the reliability of the analysis the expert used in reaching his or her conclusions. *Gross*, 149 S.W.3d at 237; *see also Robinson*, 923 S.W.2d at 558 ("The trial court's role is not to determine the truth or falsity of the expert's opinion.").

The Texas Supreme Court has articulated six non-exclusive factors appellate courts may consider in determining whether scientific evidence is reliable:

(1) the extent to which the theory has been or can be tested;
(2) the extent to which the technique relies upon the subjective interpretation of the expert;
(3) whether the theory has been subjected to peer review and/or publication;
(4) the technique's potential rate of error;
(5) whether the underlying theory or technique has been generally accepted as valid by the relevant scientific community; and
(6) the non-judicial uses that have been made of the theory or technique.

*Robinson*, 923 S.W.2d at 557. The approach to assessing reliability must be flexible depending on the nature of the evidence. *Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 216-17 (Tex. 2010). One additional consideration is whether the expert has ruled out alternative causes of injury; failure to do so may render the opinion unreliable. *See Robinson*, 923 S.W.2d at 559 (holding expert's testimony was not based upon a reliable foundation where he failed to conduct testing to exclude other possible causes of damage); *Martinez*, 40 S.W.3d at 593. Another is whether the expert's research and opinions were conducted and formed solely for the purpose of litigation. *See Robinson*, 923 S.W.2d at 559.

The *Robinson* factors, however, do not always apply to expert testimony because they are not always appropriate. *Gammill*, 972 S.W.2d at 726-27; *Goodyear Tire & Rubber Co. v. Rios*, 143 S.W.3d 107, 113 (Tex. App.—San Antonio 2004, pet. denied). "Experience alone may provide a sufficient basis for an expert's testimony in some cases, but it cannot do so in every case." *Gammill*, 972 S.W.2d at 726. Regardless of whether the *Robinson* factors are applied, the proponent of the expert testimony must still prove that the testimony is reliable. *Id.* In such a case, the court must consider whether there is too great of an "analytical gap" between the data and the expert's opinion. *Id.*

### B. Qualifications

In its motion to exclude Woehrle's testimony, Goodyear argued that Woehrle is not qualified to testify as to design defects because he is not a professional licensed engineer and he has never designed or manufactured a steel belted radial tire.

Our review of Woehrle's supplemental affidavit reveals that he obtained a Bachelor of Science degree in physics in 1966. Upon graduation, he began working at Uniroyal Tire Company, where he was employed for 25 years. Uniroyal merged with Goodrich and became Uniroyal/Goodrich in 1986. Woehrle held various positions at Uniroyal, including: Development Engineer; Resident Engineer; Project Manager of the Marketing Department; Automotive Account Engineer; Manager of Industry Standards; Manager of Testing Services; and Director of Product Evaluation. He served as Development Engineer in the Advanced Tire Products Department for three years, during which time he received extensive training in the proper methodology to use in analyzing and determining the cause of failed tires. Such methodology involves visual and tactile examination of the failed tire. Woehrle also developed tests for radial ply tires. In 1969, he assumed the role of resident engineer at a test facility that ran vehicles ten million miles annually to test tires. There, Woehrle tested "bias ply tires" manufactured by Uniroyal as well as

experimental "steel belted radial ply tires with nylon overlay" that Uniroyal was developing at the time.

In 1972, he was promoted to project manager of the marketing department where he developed a program for the company's tire and vehicle service centers to use to assess the ride and handling quality of the vehicles equipped with these new steel belted radial ply tires. He worked closely with Uniroyal dealers and taught them how to examine and determine the cause of failed tires. In 1976, Woehrle was promoted to automotive account engineer. In that role, he oversaw tests performed on Uniroyal tires for General Motors and also General Motors' qualification tests, all of which were being conducted on experimental tires to assess tire durability and ensure Uniroyal tires supplied to General Motors without nylon overlays had the same durability as Uniroyal steel belted radial ply tires with nylon overlays. In 1978, he became manager of industry standards and coordinated with other tire companies and governmental agencies to set technical standards for tires. He led the company's industry-sponsored tire research and developed new procedures for testing tires. He was also involved in analyzing and reporting on failed tires. In 1984, he assumed the role of manager of testing services where he performed a wide variety of tests on both production tires and experimental tires. In 1987, after Uniroyal merged with Goodrich, Woehrle became the director of product evaluation. He managed the testing services for the entire research and development and manufacturing operations of the company. He also led efforts to standardize procedures for tire testing with the Society of Automotive Engineers and the International Standards Organization.

In 1992, Woehrle formed Automotive Engineering Management Services, Inc., a company dedicated to serving the automobile industry by focusing on testing services. Its customers included General Motors, Ford, Chrysler, Goodyear, Michelin, Dunlop, and major auto part suppliers. Since 2005, Woehrle has worked as a consultant and expert witness for tires involved

in motor vehicle accidents. He has authored several published articles on various tire issues, including tread separation.

Goodyear argues that Woehrle's lack of an engineering degree makes him unqualified to testify in this case, but the Supreme Court of Texas has emphasized that "credentials alone do not qualify an expert to testify." *In re Commitment of Bohannan*, 388 S.W.3d at 304. Rather, the test is "whether 'the offering party [has] establish[ed] that the expert has "knowledge, skill, experience, training, or education" regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject.'" *Id.* at 305 (quoting *Roberts v. Williamson*, 111 S.W.3d 113, 121 (Tex. 2003)). Goodyear also argues that Woehrle is not a qualified expert because he has never designed or manufactured a steel belted radial tire. However, as Woehrle detailed in his affidavit, he possesses lengthy and direct experience in the tire industry with tire manufacture and failure analysis. As such, his knowledge, training, and experience in this particular industry would aid the trier of fact in determining whether the tires at issue were defective. *See* Tex. R. Evid. 702; *In re Commitment of Bohannan*, 388 S.W.3d at 304-05; *Gammill*, 972 S.W.2d at 719. Because it impliedly determined otherwise, we hold the trial court abused its discretion in determining that Woehrle was unqualified to testify. *See In re Commitment of Bohannan*, 388 S.W.3d at 307 (holding trial court abused its discretion in excluding expert's testimony and noting that "[t]he trial court's discretion in determining whether an expert is qualified to testify on a matter is broad but not unbounded"); *see also Gammill*, 972 S.W.2d at 719 (holding trial court abused its discretion in holding expert was not qualified to testify).

### C. Reliability

Goodyear also challenged the reliability of Woehrle's design defect opinion, arguing that it failed to pass muster under *Robinson/Daubert*. It also argued that Woehrle failed to fill the analytical gap between his theories regarding the lack of a nylon overlay and the subject tire.

The subject tire is a Goodyear Wrangler HT LT245/75 R16 that was manufactured in 1997 without a nylon overlay. By 2000, Goodyear had added a nylon overlay to the design of these tires. In his affidavit, Woehrle explained how tire belt separation can occur and how it can be prevented, specifically, by the addition of a nylon overlay.

> [M]y opinion that nylon overlays protect against belt separation failure is based, in part, upon my review of the Goodyear documents and the depositions of the Goodyear employees, particularly [Joseph] Zekoski, [Richard] Olsen[,] and Beale Robinson. As I have explained hereinabove, I have direct experience with the adverse effects on tire durability performance associated with the removal of a nylon overlay. Likewise, I have direct experience with the corresponding improvement associated with the addition of a nylon overlay. Specifically, I have personally supervised countless tests and reviewed the test results of each test while working at Uniroyal, where the goal of each test was to observe and investigate the role of nylon overlay in the improvement of tire endurance.

Woehrle thus opined that the lack of a nylon overlay in the subject tire constituted a design defect.

The subject tire was eight years old at the time of the accident and had more than one half of its tread left when the tread separation occurred. Woehrle performed a visual and tactile examination of the subject tire and large piece of tread that had separated from the tire carcass and determined that the tire did not have a nylon overlay. X-rays were also taken of the subject tire that confirmed a "dog ear" in the bottom belt and an overlap in the bottom belt cables.

Based upon this forensic tire inspection and review of the accident scene photographs, Woehrle concluded that the subject tire failed due to a detachment of the tread and top belt, and that the top belt separated in more than one piece. Woehrle opined that the cause of the failure of the subject tire was unsatisfactory adhesion in the belt skim rubber, the thin inner liner, a laxity in Goodyear's tolerances in its belt placement, and the absence of a nylon overlay. As the basis for his opinion, Woehrle relied on several articles as well as confidential Goodyear documents and the deposition testimony of Goodyear employees. He further opined that the addition of a nylon overlay would have been a safer alternative design, and one that was both economically and

technologically feasible to install. Specifically, a "nylon overlay could have been easily added to the subject tire as a measure to overcome belt imperfections and an inferior belt skim rubber."

As part of his inspection, Woehrle ruled out other potential causes of failure, such as customer abuse (i.e., over-deflection or under-inflation), road impact hazard, or improper repair. There was no evidence that the ambulance was operating at an excessive speed. There was also no evidence of a puncture or previous repair to the tire.

Goodyear contends that Woehrle's design defect opinion is unreliable because he: has never designed a nylon overlay for a steel belted radial tire; holds no patents of nylon overlays; has not published any scientifically reliable peer reviewed literature that addresses the design, uses, or benefits of nylon overlays; has never specified a nylon overlay for use in a steel belted tire; has never done any comparison testing on a Wrangler HT LT245/75 R16 tire with and without a nylon overlay; has agreed under oath that there is no publication that states that tires must have nylon overlays to be adequate or non-defective; and has testified that just because a tire does not have a nylon overlay does not mean that the tire is defective.

Woehrle does not, however, contend that all tires lacking a nylon overlay harbor a design defect. Instead, he focuses on "Goodyear Load Range E tires manufactured in the mid to late 1990s that were manufactured without a nylon overlay that Goodyear discovered were experiencing a dramatic increase in tread separations which led to Goodyear deciding to add a nylon cap ply to their Load Range E tires which solved the tread separation problem." Woehrle's design defect opinions were based, in large part, on Goodyear documents and Goodyear employee depositions. In 1995, Goodyear recognized that there was a marked increase in damage claims in its Load Range E tire from tread belt separations in the crown area of the tire. The problem was described as a "weak boundary layer between the two belts" that "results in a separation between the belts and often results in what has been called a tread throw since the top belt and tread separate

from the bottom belt and carcass." Goodyear employed a team to investigate and analyze the tread throw problem. The team recommended, in part, the addition of a nylon overlay on the LT235/85 R16 tire, but not on the LT245/75 R16 tire. The nylon overlay was implemented and was observed to solve the tread separation problem. Goodyear eventually added the nylon overlay to all of its Load Range E tires by 2000; however, the subject tire was manufactured in the 40th week of 1997 without a nylon overlay, approximately 20 months after the nylon overlay had been added to the same tire line in size LT235/85 R16.

As evidence that Goodyear failed to exercise ordinary care in designing the tire at issue, Woehrle also relied on the deposition testimony of Joseph Zekoski, who managed Goodyear's Light Truck Program from 1994-1996. Zekoski testified that the nylon overlay helps to distribute stresses in the crown area away from the belt edges and provides structural integrity to the tires. According to Zekoski, nylon overlays reduce strains at the belt edges thereby reducing the potential for tread separation. Zekoski further testified that it was technologically and economically feasible to add a nylon overlay to the Wrangler HT Load Range E tires when they were initially designed. In 1998, Zekoski recommended that nylon overlays be added to all Goodyear Load Range E tires. Thus, Zekoski's testimony supports Woehrle's opinion that the addition of a nylon overlay was necessary to solve the tread separation defect in the tire at issue.

Woehrle also opined that the tire's failure caused the ambulance driver to lose control. In reaching this opinion, Woehrle reviewed the ambulance driver's deposition as well as a report from the National Highway Traffic Safety Administration (NHTSA) titled "Investigation of Driver Reactions to Tread Separation Scenarios in the National Advanced Driving Simulator" which showed that an inflated tire that has lost its tread and top belt loses 75 percent of its steering capabilities and no longer functions as a normal tire. The NHTSA report thus supported Woehrle's opinion "that when the tread separation event occurred, the vehicle moved to the left into the

westbound lane of traffic and that when the driver inputted a right steer to bring the vehicle back into the eastbound lane, as the tread separation event unfolded, that the vehicle spun out, and the driver lost control and exited the roadway causing the driver's loss of control and subsequent rollover of the vehicle." Woehrle also reviewed photographs and the police report from the accident, as well as the deposition of Stan Andrews, Perez's accident reconstruction expert, in reaching his opinion that the tread separation on the subject tire caused the loss of control of the ambulance. Finally, he relied on a report titled "The Effect of Tread Separation on Vehicle Controllability" which found that the driver's ability to maintain control of a vehicle is greatly diminished and under certain conditions can be uncontrollable even by a skilled professional.

Analyzing Woehrle's opinion testimony by the considerations provided in *Robinson*, we conclude his opinions that the lack of a nylon overlay caused the tire at issue to fail and thus caused the ambulance driver to lose control are based on sound reasoning and methodology. *See Robinson*, 923 S.W.2d at 557-59. Woehrle's opinions are supported by his lengthy experience in the tire industry as well as Goodyear documents that show the addition of a nylon overlay would have alleviated the tread separation issue in the subject tire. Woehrle also ruled out alternative causes of injury, including other potential causes of tire failure and driver error. Further, because Woehrle's opinions on design defect and causation were supported by his experience, testing, and observations, as well as by Goodyear documents and employee depositions demonstrating that the tread separation issue could have been easily solved by the addition of a nylon overlay, we conclude there are no analytical gaps in Woehrle's opinions. *See Gammill*, 972 S.W.2d at 726-27. Accordingly, the trial court abused its discretion in impliedly determining that Woehrle's testimony was not reliable. *See Anderson*, 87 S.W.3d at 611-12 (noting trial court abuses its discretion in determining that an expert's opinion is not reliable if it appears from the record that the trial court acted without reference to pertinent guiding rules or principles). Because Woehrle

is qualified, his opinion is relevant[3] to the issues in the case, and his opinion is based upon a reliable foundation, we conclude the trial court abused its discretion in excluding his testimony.[4] *See* TEX. R. EVID. 702; *Cent. Expressway Sign Assocs.*, 302 S.W.3d at 870.

## II.    SUMMARY JUDGMENT

Having determined that the trial court erred in excluding Woehrle's testimony, we now examine whether the granting of summary judgment was proper.

### A.  *Standard of Review and Applicable Law*

After an adequate time for discovery, a party may move for no-evidence summary judgment on the ground that no evidence exists of one or more essential elements of a claim on which the adverse party bears the burden of proof at trial. TEX. R. CIV. P. 166a(i); *Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 834 (Tex. App.—Houston [1st Dist.] 1999, no pet.). The burden then shifts to the non-movant to produce evidence raising a genuine issue of material fact on the elements specified in the motion. TEX. R. CIV. P. 166a(i); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The trial court must grant the motion unless the non-movant presents more than a scintilla of evidence raising a fact issue on the challenged elements. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) ("More than a scintilla of evidence exists when the evidence supporting the finding, as a whole, 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'") (internal citations omitted). We indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex.

---

[3] Goodyear did not challenge the relevancy of Woehrle's opinions in its motions for summary judgment. *See* TEX. R. EVID. 702; *Robinson*, 923 S.W.2d at 556 (expert's opinion must be relevant to the issues in the case).

[4] In its motion to exclude Woehrle's testimony, Goodyear also argued that certain opinions by Woehrle were untimely because they were made after the September 1, 2011 designation deadline established by the trial court's Discovery and Docket Control Order. These opinions were, however, made known to Goodyear in Woehrle's oral deposition, and were therefore timely. *See* TEX. R. CIV. P. 193.5 (Amending or Supplementing Responses to Written Discovery).

2002). We review a no-evidence summary judgment ruling de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *Willmann v. City of San Antonio*, 123 S.W.3d 469, 472 (Tex. App.—San Antonio 2003, pet. denied).

### B. *Design Defect and Negligent Failure to Properly Design Claims*

In her "Eighth Amended Original Petition," Perez alleged that Goodyear defectively designed the tire in question and that Goodyear was negligent in failing to properly design the tire and in failing to properly design the tire to include nylon overlays. To recover for a products liability claim alleging a design defect, a plaintiff must prove that (1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which the plaintiff seeks recovery. TEX. CIV. PRAC. & REM. CODE ANN. § 82.005(a) (West 2011); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009).

We previously determined that the trial court erred in excluding Woehrle's testimony. Perez thus relies on Woehrle's affidavit to raise a genuine issue of material fact on all three elements of her defective design claim. As outlined in his affidavit to show the tire was "unreasonable dangerous," Woehrle relied extensively on Goodyear documents and employee depositions that showed Goodyear was aware, beginning in 1995, of an increase in tread belt separations in the crown area of its Load Range E tires. These same documents also support Woehrle's opinion that the addition of a nylon overlay to the tire would have easily solved the tread separation problem; i.e., that a safer alternative design was available. Finally, Woehrle's opinion that the failure of the tire caused the ambulance driver to lose control raises a fact issue as to causation. As previously noted, Woehrle reviewed the accident site photographs and police records, as well as the analysis of accident reconstruction expert Stan Andrews and the NHTSA report titled "Investigation of Driver Reactions to Tread Separation Scenarios in the National

Advanced Driving Simulator" in reaching his opinion that the tread separation on the subject tire caused the loss of control of the ambulance. Viewing this evidence, as we must, in the light most favorable to the non-movant, we conclude that Perez produced more than a scintilla of evidence that Goodyear designed a defective product. We thus conclude that summary judgment on Perez's defective design claim was improper.

Perez also provided more than a scintilla of evidence to support her negligent design claim. As previously discussed, Woehrle's design defect opinions were based, in large part, on Goodyear documents and Goodyear employee depositions that demonstrate Goodyear had knowledge that the tire at issue was experiencing tread separation problems that could be fixed by the addition of a nylon overlay, yet chose not to implement the fix. Viewing this evidence, as we must, in the light most favorable to the non-movant, we conclude that Perez produced more than a scintilla of evidence that Goodyear failed to exercise ordinary care in designing the tire at issue. We thus conclude that summary judgment on Perez's negligent design claim was also improper.

### C. *Marketing Defect and Negligent Failure to Warn Claims*

In her "Eighth Amended Original Petition," Perez alleged that Goodyear failed to properly warn that tires six years old or older should not be used regardless of tread life and failed to properly warn that the subject tire did not have nylon overlays and was at a high risk for tread separation. Specifically, Perez contends that Goodyear assumed a post-sale duty to warn of the dangers created by the tire at issue, but failed to adequately convey the urgency of the matter. The notice sent by Goodyear to owners of the 15-passenger vans and ambulance operators indicated that if a tread separation occurs, it may necessitate pulling over to the side of the road to change the tire. Perez contends that the warning should have been stronger, and should have warned that tread separation may cause loss of control and a crash.

Whether a plaintiff seeks recovery because of negligence or strict liability in tort, the burden is on the plaintiff to prove that the injury resulted from a defect in the marketing of the product. *See Ethicon Endo-Surgery, Inc. v. Gillies*, 343 S.W.3d 205, 211 (Tex. App.—Dallas 2011, pet. denied); *Ford Motor Co. v. Miles*, 141 S.W.3d 309, 315 (Tex. App.—Dallas 2004, pet. denied). A strict liability marketing defect cause of action consists of five elements: (1) a risk of harm that is inherent in the product or that may arise from the intended or reasonably anticipated use of the product must exist; (2) the product supplier must actually know or reasonably foresee the risk of harm at the time the product is marketed; (3) the product must possess a marketing defect; (4) the absence of the warning and/or instructions must render the product unreasonably dangerous to the ultimate user or consumer of the product; and (5) the failure to warn and/or instruct must constitute a causative nexus in the product user's injury. *Rios*, 143 S.W.3d at 116. To prevail on her negligent marketing claim, as opposed to a strict liability marketing defect claim, Perez was required to establish four elements: 1) a duty by the defendant to act according to an applicable standard of care; 2) a breach of the applicable standard of care; 3) an injury; and 4) a causal connection between the breach of care and the injury. *Ethicon*, 343 S.W.3d at 211-12. In its "Second No Evidence Summary Judgment Motion," Goodyear alleged that Perez failed to present any evidence to support any one of the elements of her marketing defect claim.

Expert testimony is required in the context of strict liability marketing defect claims. *See Nissan Motor Co., Ltd. v. Armstrong*, 145 S.W.3d 131, 137 (Tex. 2004). In negligent marketing cases, expert testimony will be required to establish the standard of care "when the alleged negligence is of such a nature as not to be within the experience of the layman." *See FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 90-91 (Tex. 2004); *Ethicon*, 343 S.W.3d at 211.

Because the standard of care in marketing a particular tire is not within the experience of laymen, we must conclude expert testimony was required to prove negligent marketing of the tire

at issue. *See Fulgham*, 154 S.W.3d at 90-91; *Ethicon*, 343 S.W.3d at 212; *Rios*, 143 S.W.3d at 118 (expert testimony required in defective marketing case to establish which warning and instruction should have been printed on tire sidewall). Perez was thus required to offer expert testimony that Goodyear failed to exercise ordinary care in the marketing of the HT LT 245/75R16 tire. *See VIA Metro. Transit v. Garcia*, 397 S.W.3d 702, 708 (Tex. App.—San Antonio 2012, pet. denied); *see also Rios*, 143 S.W.3d at 118.

Woehrle does not hold himself out as a warnings expert, and at oral argument before this court, Perez's counsel conceded that if he needed a warnings expert to survive summary judgment on the marketing claims, he did not have one. Given the lack of any expert testimony related to the marketing of the tire at issue, we conclude that Perez failed to raise a genuine issue of material fact on any of the elements of her negligent and defective marketing claims. Summary judgment in favor of Goodyear on the negligent and defective marketing claims was thus proper.

## CONCLUSION

Based on the foregoing, we reverse the portion of the trial court's order granting summary judgment in favor of Goodyear on Perez's design defect claims, and we remand the case to the trial court for further proceedings consistent with this opinion. In all other respects, we affirm the judgment of the trial court.

Rebeca C. Martinez, Justice